Alain Villeneuve (admitted *pro hac vice*)
Senior Vice-President & General Counsel of TRX
1420 Fifth Avenue, Suite 2200
Seattle 98101, WA
Telephone: (312) 404-1569
Email: avilleneuve@trxtraining.com

Anjali J. Patel
Tyler Allen Law Firm, PLLC
4201 North 24th Street, Suite 200
Phoenix AZ 85016
Cellphone: (602) 904-0765
Main: (602) 456-0545
www.allenlawaz.com

Attorneys for Plaintiff JFXD TRX ACQ LLC, dba TRX

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JFXD TRX ACQ LLC, a Florida Limited Liability Company, dbat TRX<br><br>Plaintiff,<br><br>v.<br><br>trx.com et al.,<br><br>Defendants. | Case No. 2:23-cv-02330-PHX-ROS<br><br>**STATEMENT IN SUPPORT OF ACPA CLAIM**<br><br>Judge: Honorable Judge Roslyn O. Silver |

This Court, on January 9, 2024, asked TRX to file a "statement explaining how its cybersquatting claim is viable." (Dkt. #82, page 5). The Court points to *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011), and *Blair v. Automobili Lamborghini SpA*, 2023 WL 454852, at *2 (D. Ariz. July 14, 2023), which stands for the notion that a transfer of a URL acquired pre-brand arrival insulates a subsequent buyer against claims under the Anti-Cybersquatting Consumer

Protection Act ("ACPA") 15 U.S.C. § 1125(d). It is very easy to demonstrate how Defendant's purchase in 2022 at a registrar is a "registration" under GoPets and not a "re-registration" for which the ACPA is tolled. In support, Plaintiff offers:

## I.    REGISTRATION V RE-REGISTRATION UNDER GOPETS

GoPets reminds us: "When an individual registrant registers a domain name, she pays the registrar a fee and gives the registrar a registrant name, along with contact, billing, and technical information." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011)(emphasis added). "Because Edward Hise [a Defendant] registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate § 1125(d)(1)." Id. at 1031.The case explains how registrar information can be updated, periodically when a good faith transfer, sale, change of contact happens and these are not "registration" but "re-registration."

In *GoPets*, Defendant and URL owner Hise purchased the URL www.gopets.com with a good faith desire as early as March 1999. In 2004, a later-in-time Korean brand arrived, and was fully registered by 2006. When 2005 turned the corner, the parties were unable to consummate a sale. The Korean later-in-time brand owner proceeded to the UDPR ICANN which denied the request. By late 2006, the brand owner offered $40,000 while Edward Hise "transferred" the URL to his own entity named "Digital Overture Inc." as negotiations resumed the negotiation now asking for $5 million. *GoPets Ltd. v. Hise*, 657 F.3d 1024-1029 (9th Cir. 2011). To the Court, sale from Mr. Hise to Digital Overture Inc. was a comity of ownership and did not qualify as "registration" and instead was seen as a "re-registration." Not every act can qualify as "re-registration" or this would create an ad infinitum safe harbor to a URL against the ACPA and as shown below would result in a non-sensical status of URLs purchased today.

The 9th Circuit explaining how its holding is coherent with the 3rd Circuit in *Schmidheiny v. Weber*, 319 F.3d 581 (3rd Cir. 2003), wrote: "The Third Circuit assumed that Weber's initial registration of schmidheiny.com was not covered by § 8131(1)(A) because it had been made before the passage of ACPA. Based on that assumption, the Third Circuit was concerned that holding that re-registration was not "registration" within the meaning of ACPA would "permit the domain names

of living persons to be sold and purchased without the living persons' consent, ad infinitum, so long as the name was first registered before the effective date of the Act." Id. However, we believe that the Third Circuit erred in assuming that Weber's initial registration was not covered by ACPA. We agree with the holding of the Second Circuit in Sporty's Farm that § 1125(d)(1)—and, by extension, § 8131(1)(A)—apply to registrations made before the passage of ACPA. See Sporty's Farm, 202 F.3d at 496–97. If Weber's initial registration violated § 8131(1)(A), as we would hold it did, the Third Circuit's concern evaporates." (quotations omitted) Id. at 1032. The 9th Circuit did not want to eviscerate the ACPA and was careful with the broad reach of its holding.

The 9th Circuit also clearly explained: "When an individual registrant registers a domain name, she pays the registrar a fee and gives the registrar a registrant name, along with contact, billing, and technical information. The words "registration" and "register" are not defined in ACPA. <u>It is obvious that, under any reasonable definition, the initial contract with the registrar constitutes a "registration" under ACPA.</u>" Id. at 1031 (emphasis added). Buying from a registrar is a registration and the ACPA and applies at the time of this contact / purchase. Re-registration occurs when the first buyer sells or alters the registrar contact to a new party in comity. A party who owns a URL and fails to renew it sees the URL fall back to the public domain back to a registrar and a new cycle begins with registration as the first act.

## II. SELLING URLs CANNOT BE RE-REGISTRATIONS AS THIS LEADS TO A NON-SENSICAL APPLICATION OF THE LAW

Below is an image of the www.4.cn page where URLs are purchased and registered by new owners. As shown below, this is the site where Defendant claimed to have purchased <trx.com> in 2022. If the *GoPets* doctrine with ad infinitum "re-registration" rights lingers on one URL and not the other, a buyer would be clueless if certain of these registrations qualified as "registrations" and other "re-registrations" immune to the ACPA. Today the website sells <55pz.com>. If a famous U.S. brand named "55PZ" born in 2015 saw this, would a purchaser secure it as a "registration" or a "re-registration"? The purchase on this site, a registrar clearly qualifies as registration under GoPets.



website www.4.cn selling URLs

The ACPA is clear, URLs are not candies or digital investments to be collected freely. When acquired, famous known brands have rights. Good faith buyers are always immune from the ACPA, so buying <coca-cola.com> to launch a new shoe brand is legal and good faith. Using the URL to display your own soda bottles is legal. But collectors or investors, at the time of purchase can be subject to the ACAP if they acquire brand similar to famous brands without good faith use but simply to profit. The entire purpose of the ACPA was to protect brand owners, carve out against such purchases.

### III. AS VALUE OF URLS PLUMMET, THIS COURT WILL SEE MORE REGISTRATIONS POST RE-REGISTRATION PERIODS

Once upon a time URLs were very valuable for two key reasons; there was a very limited supply all trading using the TLD ".com" and the demand was exploding as everyone needed a simple URL to be typed and memorized by customers. Today's world is different. Dynamic links, peppered

in every email now allow individuals to surf without even knowing or seeing a URL The modern cell phone browsers even pass on showing the URL. ICANN also democratized the three letter extension TLDs. The once supreme .com was diluted to hundreds of choices. GoDaddy.com® and 4.cn® both offer the URL <trx.com.co> for $19.99/year. This URL is available for "registration" by Plaintiff at a click (and not re-registration under the ACPA). Plaintiff is in the world of fitness and can get <trx.studio> for $139.99, and <trx.coach> for only $19.99. As the URL values crash, business owning these URLs simply let them lapse and return to the public domain. As shown below, this case is a great example of this trend. Defendant admits buying the URL from a registrar in 2022, the same way Plaintiff can now buy <trx.com.co> from GoDaddy®.[1]

### IV. THE OWNERSHIP STORY OF <TRX.COM> FROM 1999 TO 2023 CONFIRMS THE 2020/2022 PERIOD RESULTED IN DROP TO REGISTRAR AND SUBSEQUENT REGISTRATION AND NOT RE-REGISTRATION

#### I. <TRX.COM> BORN IN 1999 AS PART OF AN OMNIBUS GRAB OF URLS GIVING BIRTH TO ALL SMALL URLs

The WHOIS® from ICANN® show the birth of the URL <trx.com> on 1999-03-06. It is unclear who initially owned it creation but Congress, as part of the U.S. Cyber-piracy Act specifically noted:

> `*In another example of bad-faith abuses of the domain name registration system, Network Solutions--the domain name registry that administers the Internet's ``.com,'' ``.net,'' ``.org,'' and ``.edu'' top level domains--pulled on a London computer club in May, 1999, that had registered over 75,000 domain names using an automated computer program. <u>Their aim was to lock up all available four letter domains by systematically reserving every possible combination of letters, starting with aaaa.com, then aaab.com, aaac.com, up to zzzz.com, until every available combination had been reserved</u>.*

Section III, Discussion. Report to the Committee on the Judiciary, The Anti-cybersquatting Consumer Protection Act, Senate Report 106-140, 1st Session, August 5, 1999 (quoting "Run on Domain Names Foiled, Wired News," May 27, 1999). Plaintiff assumes <trx.com> likely was part

---

[1] One of the key factors under the ACPA is "substantial similarity" which arguably weakens any rights against URLs with other words.

of this first omnibus cybersquatting. Clearly simple existence in 1999 cannot exclude each of these URLs from the ACPA unless a brand is 25+ years old.

## II. AROUND 2000 <TRX.COM> WAS "ACQUIRED" BY TRX Inc.

The online web archive (web.archive.com) evidence that around 2000, a good faith owner called TRX Inc. from Atlanta (unrelated to this brand) began using <trx.com>. TRX Inc. from Atlanta, an outsourcing and data management company filed for protection of TRX in Classes 035, 039, and 042.[2] The application's own first use of TRX dates back to 2000. This company called "TRX Inc." began to use <trx.com>. Below is an image from 2013, a date that post-dates Plaintiff's brand.



2013 Page of use of <trx.com> by TRX Inc. from Atlanta

## III. <TRX.COM> TRANSFERRED TO CONCUR AROUND 2013

Upon information and belief, and upon investigation, around in 2013, a Nasdaq-traded company named Concur® (now a division of SAP®) acquired TRX Inc. TRX Inc.'s trademark began to float at the trademark office until it was cancelled. The online archives show that from 2013 to

---

[2] U.S. Registration No. 2,707,451 for TRX & design in Classes 035, 039, and 042, Application Date February 14, 2000, and Registration Date of April 15, 2003.

2019, the URL was of little to no use. When 2019 turned the corner, a single yearly recording by the archive system showed a redirect to the "concur.com." In 2020, the "Wayback Machine" seeing no activity registered and no record. There is no evidence of use as anything but a redirect. The transfer of ownership from TRX Inc. to Concur in 2013 is explicitly what *GoPets* is designed to protect.

## IV. <TRX.COM>  FALLS TO THE PUBLIC DOMAIN AROUND 2020-2021

The URL fell in the public domain and any chain of ownership dropped. The Wayback® machine shows the URL resurfaces to life in 2021 and offers a picture of an offer page for sale of the URL for nothing short of $1,458,745 USD (€1,200,000). The button "purchase now" directed to the website "dan.com" which research shows was founded in 2014, and is owned by GoDaddy, Inc., the registrar itself. This is evidencing the URL was abandoned as no one sells back a URL to a registrar, and this is compounded by the fact Concur® / SAP® is not in the business of selling URLs. The current "Registrar" is GoDaddy.com, LLC and the listed "Registrant" is "au tuu" and not the Defendant Ming.[3] This broke any chain of ownership.

## V. "MING" EVEN ADMITS BUYING THE URL IN 2022 FROM A REGISTRAR

As part of the Defendant's own admissions, he provides: "Recently, the Plaintiff became interested in investments in digital assets, and was advised that the internet domain name TRX.com was available for sale." (Case 2:22-cv-02042, Document 1, ¶ 10). "After learning that non-distinctive short domain names have substantial value, Plaintiff was informed the Domain Name was available for purchase, and the Plaintiff purchased the Domain Name TRX.com in April 2022, more than $138,000 in out-of-pocket costs through a brokerage service provided by an internet domain name marketplace where it was for sale." (Case 2:22-cv-02042, Document 1, ¶ 16). "The Domain Name was available for purchase through a publicly accessible internet brokerage at www.4.cn. Prior to Plaintiff's purchase of the Domain Name at substantial cost, any other person, including Defendant could have purchased the Domain Name on the same terms." (emphasis added). (Case 2:22-cv-02042, Document 1, ¶ 18). For Defendant to predate the 2004 brand, the 2022 purchase must be in continuation of ownership with the pre 2004 owners. Ming admits he purchased the URL on April

---

[3] Ownership of a brand is presumed from a Certificate of Registration (15 U.S.C. 1057(b)). Ownership of the URL <trx.com> should be inferred as being the Registrant, namely "au tuu."

2022, more than 15+ years after the brand. More importantly, it is important to understand how the website www.4.cn in fact is only a broker that buys from registrars like GoDaddy.com.

## VI. FURTHER EVIDENCE A REGISTRAR OWNS THIS URL

Mid 2022, Plaintiff looked if the URL was available for $19.99 on GoDaddy®. It was not. GoDaddy LLC offered a paid broker service for $69.99. Plaintiff gladly paid. What happened next is worthy of a fiction book. Within the hour, an excited private agent called saying he was from the GoDaddy brokerage. There was a smell of money in the air, the same vibe as entering a used car showroom. The GoDaddy refused to contact the owner to simply see if it was willing to sell. The WHOIS had listed "au tuu" from Iceland and Plaintiff's previous efforts never worked. The agent was forceful and explained the URL was "worth millions" and tried to bully Plaintiff in giving an initial seven number initial offer. Plaintiff, pushed back saying a broker should not have an incentive to raise prices and online tools priced this, at most, in the mid five figures. The exchanges were so forceful, Plaintiff reported the misconduct to GoDaddy LLC who then magically assigned a new broker. The second agent was in shock and did not know who the first agent was and what had happened.

## V. THIS URL WAS REGISTERED IN 2022, NOT RE-REGISTERED AND THE ACPA APPLIES TO THE PURCHASE AS THE PLAINTIFF'S BRAND WAS 15+ YEARS PROTECTED AND FAMOUS

The patented technology known as TRX® was born in 2003. Fitness Anywhere LLC, the first brand owner, applied for the three-letter trademark TRX® late in 2004.[4] This first registration issued in 2007 with the 2005 date of first use and a 2004 date of priority. This date is admitted as the birth of TRX®. If Defendant can show (a) ownership, and (b) a chain of title / transfer which predates 2004, arguably the GoPets doctrine could apply. Here, the Defendant admits the URL fell back in the public domain and was purchased from a registrar. The facts here given support "registration" by Defendant, not "re-registration." The historical investigation also supports such a finding alongside with the strange broker event in 2022.

If somehow the URL <apple.com> was acquired by a good faith owner or before the arrival

---

[4] U.S. Registration No. 3,202,696, for TRX in Class 028. It was filed November 5, 2004, first use January 31, 2005.

of the brand, subsequent sales downstream for value benefit from the GoPets re-registration doctrine. But if an owner drops the URL, fails to renew it, then it returns in a common depository where the URL is then "registered" by a whole new person. The simple part of it is that buyer beware when buying a new URL on a registrar site. Courts will protect your interest and the interest of those in comity after you to preserve your value, but not if the clock is reset.

### VI. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiff thanks this Court for addressing this issue sua sponte. Plaintiff will gladly amend the complaint now filed almost a year ago to plead these facts if this can help either overcome the Court's concerns or create a better record on appeal. Defendant has admitted here he "registered" this URL, and this is not a case of "re-registration" to preserve value for a good faith purchaser back in 1999.

Dated: January 18, 2024

By: _/ s / Alain Villeneuve (pro hac)_

Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify on January 18th, 2024 I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Michael B. Marion
**BYCER & MARION**
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
michael@bycelmarion.com
Attorney for Defendant Loo Tze Ming

STATEMENT IN SUPPORT OF ACPA CLAIM          CASE NO. 4:23-cv-02330