Michael B. Marion (Bar No. 035627)
**BYCER & MARION**
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
michael@bycermarion.com
*Attorney for Defendant*
*Loo Tze Ming*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JFXD TRX ACQ LLC, a Florida limited liability company, d/b/a TRX,<br><br>Plaintiff,<br><br>v.<br><br><trx.com>, a domain name,<br><br>and<br><br>Loo Tze Ming, an individual from Malaysia,<br><br>Defendants. | No. 2:23-CV-02330-PHX-ROS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT IN SUPPORT OF ACPA CLAIM** |

Pursuant to the Court's Order of January 8, 2024 (Dkt. 82), Defendant Loo Tze Ming ("Defendant"), by and through undersigned counsel, submits its Response to Plaintiff's Statement in Support of ACPA Claim ("Statement") (Dkt. 83).

The legal argument contained in Plaintiff JFXD TRX ACQ, LLC ("Plaintiff")'s Statement is little more than old wine in new bottles. JXFD is grasping at straws that somehow the 1999 initial registration date of the <trx.com> domain does not bar Plaintiff's ACPA claim given its trademark rights were not established until 2004. JFXD again attempts to create new exceptions to binding precedent—that some domain name sales are "re-registrations" while other are not—that would gift them Defendant's lawfully obtained property of its <trx.com> domain. JFXD twists itself into knots arguing that the purchase of <coca-cola.com> could be legitimate

(Statement at 4), despite the distinctive COCA COLA brand was established nearly a century before the creation of the Internet. JFXD's attempt to create a post-registration history of the <trx.com> domain is a red herring. Nothing can change that its trademark rights post-date the **initial** registration of the website and that Ninth Circuit precedent does not support JFXD's claim under the ACPA.

To the extent that JFXD's Statement purports to contain new factual allegations, nearly fifteen months after the UDRP Complaint was filed against Defendant and eleven months after JFXD filed this matter, the content is little more than a loose assembly of internet searches and baseless conjecture. JFXD makes no attempt to put admissible evidence before the Court that could evaluated, which makes it nearly impossible for Defendant to respond, and Defendant's failure to rebut any specific allegation should not be viewed as conceding such allegation. Regardless, as explained, these allegations are irrelevant anyway under *GoPets*, warranting dismissal of JFXD's Complaint for failing to state a claim upon which relief can be granted.

### A. JFXD Cites No Authority that *GoPets* Bars Its ACPA Claim

JFXD only relies on two cases in its Statement—the *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011) that the Court has already addressed, and *Schmidheiny v. Weber*, 319 F.3d 581 (3rd Cir. 2003), as discussed in *GoPets*. The *Schmidheiny* case concerned the retroactivity of the ACPA statute, not the question of what constituted a "registration" under the ACPA. Rather, as *GoPets* concluded, persons protected under 15 U.S.C. § 8131(1)(A) could seek relief under the ACPA so long as the rights were established before the initial registration of the infringing domain, regardless of whether that registration occurred prior to the passage of the ACPA. *GoPets*, 657 F.3d at 1031. *Schmidheiny* neither aids the Court nor supports JFXD's position.

Ultimately, the Ninth Circuit is clear in its precedent. "We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner." *GoPets*, 657 F.3d at 1031. Once the

domain name is created, the Ninth Circuit concluded, the domain must be freely alienable by the property owner without any caveats or restrictions on such transfer. *Id.* at 1032.

Likewise, this Court has repeatedly upheld the Ninth Circuit's *GoPets* decision that the **initial** registration of the domain name is compared against the date the alleged trademark rights became distinctive, regardless of any subsequent transfer of rights. *See Mira Holdings Inc. v. UHS of Delaware Inc.*, No. CV-23-00169-PHX-MTL, 2023 WL 5333262, at *7 (D. Ariz. Aug. 18, 2023) ("Under *GoPets*, the distinctiveness of a mark is judged at the time of the initial registration of a domain name, not at the time of any subsequent re-registration of that domain name."). It is also irrelevant the circumstances under which the domain name had changed hands. *See AirFX.com v. AirFX LLC*, No. 2:11-cv-01064-FJM, 2012 WL 3638721, at *4 (D. Ariz. Aug. 4, 2012) ("*GoPets* did not distinguish between transfers of a domain name to related parties and other kinds of domain name transfers."); *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2021 WL 242100, at *9 (D. Ariz. Jan. 25, 2021) ("The Ninth Circuit's discussion of transfers of a domain name does not support [the] argument that the Ninth Circuit intended to limit such transfers only to a party affiliated with the original registrant."). An allegation that Defendant purchased the <trx.com> domain in 2022 has no bearing on the date the <trx.com> domain was initially registered, regardless of how Defendant acquired the domain.

The Ninth Circuit's reasoning is sound as balancing the property rights of domain name holders against new trademark entrants. A hypothetical company establishing a new brand can survey the registered web domains at the time the company launches the new brand and decide accordingly whether to pursue that new brand given the already established domains. The new brand could then proceed with establishing its brand given the domains that were already registered or pick a different brand for its products. As JFXD argues, another company beat JFXD (or rather an alleged predecessor) to the punch to <trx.com>, likely through the registration by TRX Inc. Statement at 6. Any alleged owner of TRX-trademark rights in 2004 would know that the <trx.com> domain was already taken long before any established trademark rights.

Nonetheless, JFXD tries to flip the ACPA on its head, arguing that, despite knowing (or that it should have known) when it established its alleged trademark rights in 2004 that the <trx.com> domain was not available, it is nonetheless entitled to the <trx.com> web domain if it just waits for a change in ownership. *GoPets* and *Blair v. Automobili Lamborghini SpA*, 2023 WL 4548352 (D. Ariz. July 14, 2023) recognized that the ACPA does not permit the second-comer to usurp the already established property rights for the first registered domain name. It is undisputed that the initial registration of <trx.com> predates any rights JFXD could claim in its trademark. JFXD's ACPA fails as a matter of law.

### B. JFXD Makes No Factual Allegation that Defendant's Registration of <trx.com> is an "Initial" Registration

Unable to avoid the *GoPets* precedent, JFXD attempts to argue, again, that Defendant's registration of <trx.com> was an "initial" registration under *GoPets*. Despite failing to identify any "caveat" or "exception" under *GoPets*, JFXD nonetheless keeps insisting that the sale of <trx.com> to Defendant was not an alienable "sale" under *GoPets*. Although none of the allegations in the remainder of the Statement have any bearing on JFXD's claim, Defendant nonetheless feels compelled to respond to the more outlandish claims.

JFXD repeatedly argues that somehow the <trx.com> domain was in the "public domain" sometime subsequent to its initial registration. *See, e.g.*, Statement at 6. First, such a statement is nonsensical, as the "public domain" cannot apply to privately owned web domains. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 1.01[2] at 1-3 (3d ed. 1996) ("[P]ublic domain is the status of an invention, creative work, commercial symbol or other creation that is not protected by any form of intellectual property."). A web domain does not exist until it is registered, and then, from then on, there is an owner of that registration. A web domain cannot be jointly shared by any and all owners. Nor would it be possible for something within the public domain to be returned to the private sphere—it would defeat the public domain. At best, JFXD is alleging that a sale of a web domain through a public auction or sale, rather than a private transaction, somehow transforms the public sale into a new

4

"initial registration." Nothing in the ACPA Statue, the *GoPets* precedent, or any of the cited cases before this Court, creates such an arbitrary distinction between public sales or auctions of domain names and private transactions of domain names.

Despite its bogus "public domain" argument, JFXD argues that, at the time it was in the "public domain" it was actually owned by GoDaddy. JFXD disingenuously claims that since the <trx.com> domain was available on <dan.com>, the <trx.com> domain was returned to the registrar GoDaddy. This is false. The website <dan.com> is a platform used by private domain owners for secondary market domain transfers. *See* Ex. A ("Dan & GoDaddy join forces" available at https://medium.com/undeveloped/dan-godaddy-join-forces-db6989402f8d (last accessed January 25, 2024)). <dan.com> is a wholly separate business entity from GoDaddy's registrar service. There is no basis for JFXD to claim that the domain was "returned" to GoDaddy, and even then, why that would alter the precedent under *GoPets*. JFXD cannot disavow the whois.com information that it relied upon when it sought a preliminary injunction, which established the <trx.com> domain was first registered in 1999.

### C. JFXD Fails to Address Its Own Ownership Issue

Ironically, while focusing on irrelevant ownership of the <trx.com> domain, JFXD ignores the Court's Order requiring JFXD to explain its conflicting positions adopted by Mr. Villeneuve, specifically, whether Fitness Anywhere owned any TRX-related property at the time Mr. Villeneuve stated Fitness Anywhere "is the owner of the famous trademark TRX." Dkt. 82 at 5. Unable to explain itself, JFXD nonetheless seeks to continue pursuing claims it cannot maintain under the law.

### D. Conclusion

The resolution of this case is a simple exercise for the Court. A valid claim under the ACPA must establish that a mark became distinctive before the initial registration of a domain name. *Mira Holdings Inc..*, No. CV-23-00169-PHX-MTL, 2023 WL 5333262, at *7 (D. Ariz. Aug. 18, 2023). Nowhere under *GoPets* and the precedents of this Court is there a carve-out for

certain subsequent transfers of the domain name to not qualify as "re-registrations," nor do these cases permit the creation of a second "initial registration" of an already registered domain. JFXD's failure to establish trademark rights prior to 1999 is fatal to its claim under the ACPA and no potential amendments to the Complaint could cure this defect. Since JFXD cannot maintain a claim under the ACPA, dismissal of the Complaint is warranted.

Dated this 25th day of January 2024.    **BYCER & MARION**

By: */s/ Michael B. Marion*
Michael B. Marion (Bar No. 035627)
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
michael@bycermarion.com
*Attorney for Defendant Loo Tze Ming*

# CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of January 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) and copy of this document to all counsel of record who are deemed to have consented to electronic service.

Anjali J. Patel (SBN 028138)
Tyler Allen Law Firm, PLLC
4201 North 24th Street, Suite 200
Phoenix, AZ 85016
Telephone: (602) 456-0545
Email: Anjali@allenlawaz.com

Alain Villeneuve (pro hac vice)
1420 Fifth Avenue, Suite 2200
Seattle 98101, WA
Telephone (312) 404-1569
Email: avilleneuve@trxtraining.com

By: /s/ Michael B. Marion
Michael B. Marion
Bycer & Marion, PLC
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
(602) 944-2277
michael@bycermarion.com