Kenneth M. Motolenich-Salas (Bar No. 027499)
MotoSalas Law, PLLC
16210 North 63rd Street
Scottsdale, AZ 85254
Telephone:   202-257-3720
E-mail:   ken@motosalaslaw.com
*Attorney for Defendants trx.com and Loo Tze Ming*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JFXD TRX ACQ LLC, d/b/a TRX, a Florida limited liability company, | **No. 2:23-CV-02330-PHX-ROS** |
| Plaintiff, | **DEFENDANTS TRX.COM AND LOO TZE MING'S MOTION FOR ATTORNEY FEES AND NON-TAXABLE EXPENSES PURSUANT TO LRCiv 54.2 AND 15 U.S.C. § 1117(a)** |
| v. | |
| <trx.com>, a domain name, | |
| and | |
| Loo Tze Ming, an individual from Malaysia, | |
| Defendant. | |

MotoSalas Law, PLLC
16210 North 63rd Street
Scottsdale, Arizona 85254
(202) 257-3720

MotoSalas Law, PLLC
16210 North 63ʳᵈ Street
Scottsdale, Arizona 85254
(202) 257-3720

## I.    Introduction

Plaintiff JFXD TRX ACQ LLC ("Plaintiff") acerbically pursued a loser of a case that had absolutely no objectively reasonable chance of success under well-established Ninth Circuit precedent. This vexatious effort included, among other things, (i) false (or, at best for Plaintiff, misleading) statements to the Court, (ii) initiation of an action in another district despite the pendency of a related case involving the same domain, (iii) failure to comply with this Court's orders, (iv) unethical *ex parte* communications with the Court, and (v) a derisive and derogatory attitude to Defendants replete with the hurling of insults. As such, this case justifiably warrants treatment as exceptional and Defendants trx.com and Loo Tze Ming ("Ming") respectfully request that this Court award Defendants their attorney fees and, in view of Plaintiff's frivolous appeal to the Ninth Circuit, the posting of bond until Plaintiff's appeal is either dismissed or this Court's rightful and well-reasoned Order dismissing the case (Doc. 88) is affirmed.

## II.    Factual Background

The facts in this case read like a legal soap opera.[1] This case, initiated by Plaintiff and fundamentally a false claim of ownership amounting to reverse domain name hijacking of trx.com by Plaintiff, has its genesis in the bad-faith filing of a lawsuit after selective forum shopping by Plaintiff when an existing prior-filed case involving the same subject matter (*viz.,* the trx.com domain) had been filed months before in this Court, which will be discussed *infra.* What prompted the bad-faith initiation of this case in turn stemmed from Plaintiff's realization that the party that had brought a related prior UDRP action in the first place, Fitness Anywhere, had no standing to do so. And, the basis of these wrongful and baseless legal maneuvers was an unquestionably untenable premise that a party that conceives and starts using a mark years after the good-faith registration of a domain by a registrar can later claim ownership of that domain by falsely claiming bad-faith registration and use of a domain by a party that purchased the domain in good faith on the open market, which runs fully contrary to Ninth Circuit precedent laid down in *GoPets Ltd. v. Hise,* 657 F.3d 1024 (9th Cir. 2011). So, let's begin.

---

[1] The machinations comprising the exceptionally fraudulent scheme conceived by Plaintiff to wrest rightful ownership of trx.com away from Ming has provided fodder for the domain name press, which has written extensively on it. (**Ex. 1** [composite exhibit of articles by Andrew Alleman concerning TRX.com saga].)

<u>Creation of TRX.com and Conception of the TRX Trademark</u>: A long, long time ago in 1999, an unknown third party registered the domain trx.com. (Doc. 82 at 1:22-24.) Plaintiff claims rights in the TRX trademark stemming from the ostensible first use of TRX for a "famous gym product" in 2003, four years later. (Doc. 82 at 1:27-28 [quoting Doc. 68 at 3].). Over the following years, Fitness Anywhere obtained and used numerous TRX-formative trademarks. (Doc. 82 at 2:2-3 [citing Doc. 68 at 3].) These rights were federalized through various registrations of the TRX trademark with the Trademark Office. In the schedule of IP assets filed with the bankruptcy court, Fitness Anywhere listed various TRX trademark registrations that it held: 3,384,871; 3,202,696; 4,731,160; 4,998,892; and 4,542,811. (**Ex. 2** at 310, highlighted entry [Ex. 60 from Schedule of Assets filed in the bankruptcy case at Doc. 19].) For some unknown reason, it did not list the TRX registration no. 4,018,159.[2] The earliest of the dates of first use identified on the registrations is Jan. 31, 2005 ('871/'696 Registrations), which comes approximately two years after the alleged first use. As such, there is no question that Plaintiff's rights in the TRX mark first arose in 2003 and are subsequent to the 1999 registration of trx.com.

<u>Bankruptcy and Trademark Assignment; Ming Purchase of TRX.com</u>: Ultimately, Fitness Anywhere filed bankruptcy on June 8, 2022. (*See* **Ex. 4** [bankruptcy case docket, *In re Fitness Anywhere, LLC*, 8:22-bk-10949-SC (Bankr. C.D. Cal.), accessed Mar. 19, 2024]; Doc. 82 at 2:3-4.) While in bankruptcy, Fitness Anywhere, on Aug. 22, 2022, assigned the TRX marks to Plaintiff.[3] Months before the Fitness Anywhere bankruptcy and trademark assignment, Ming, through an alias, purchased TRX.com in April 2022 from an online brokerage. (*Id.* at 1:24-25.)

<u>Bad Faith Filing of UDRP</u>: Months after Fitness Anywhere assigned away its TRX trademark rights, it filed, on Oct. 18, 2022 through Alain Villeneuve, a fraudulent UDRP proceeding against Defendant Ming's alias based on such assigned rights, claiming Ming's bad faith use and registration of trx.com. (*See* **Ex. 6** [UDRP Decision from *Fitness Anywhere LLC v. au tuu,* Claim No. FA2210002016615]; Doc. 82 at 2:6-8 [citing Doc. 68-2].) During the UDRP,

---

[2] True and correct copies of the certificates of the TRX trademark registrations obtained on March 19, 2024 from the TSDR database, https://tsdr.uspto.gov/, are attached hereto as **Ex. 3**.

[3] (**Ex. 5** [Trademark Assignment Cover Sheet & Assignment Document obtained from Trademark Office assignment database, https://assignments.uspto.gov/assignments/assignment-tm-7847-0407.pdf]; Doc. 82 at 2:4-6 [citing Doc. 74-3].)

Villeneuve made false statements concerning TRX mark ownership by falsely "stat[ing] Fitness Anywhere was 'the owner of the famous trademark TRX.'" (Doc. 82 at 4:28-5:2 [quoting Doc. 68-2 at 4].) The exceptional nature of such fibs told by Villeneuve in the UDRP regarding TRX mark ownership was noted by the lay press. (Ex. 1 at ART-23, 32, 36.) Notwithstanding this fraud on the Arbitration Forum, the forum's panelist, without being presented with the full set of facts, on Nov. 11, 2022, ruled in favor of Fitness Anywhere, even though it had no standing to bring the UDRP proceeding in the first place. (Ex. 5; Doc. 82 at 2:10-13.) The controversial nature of the UDRP decision, the result of exceptional action taken by Plaintiff's counsel, was noted in the lay press. (Ex. 1 at ART-32.) To stop the wrongful UDRP decision,[4] Ming, on Nov. 30, 2022, filed a still-pending civil action in this Court, *Ming v. Fitness Anywhere,* 22-cv-02042.

    <u>Plaintiff Embarks on Forum Shopping and Disregard of Fundamental Rules of Civil Procedure</u>: Despite actual knowledge of a prior-filed action involving the identical subject matter (*viz.,* trx.com), Plaintiff filed a complaint against Ming in the Eastern District of Virginia. This was not an innocent mistake but a willful act that contravened established tenets of civil procedure.[5] First, a prior-filed case existed, and Plaintiff, in utter contempt of the judicial system's limited resources, proceeded anyway in bad faith to file a lawsuit in Virginia, disregarding the "first-to-file" rule, or comity doctrine.[6] In doing so, Plaintiff demonstrated duplicity by trying to obtain a favorable outcome at the expense of "limited judicial resources."[7]

---

[4] This Court implicitly recognized the wrongfulness of the UDRP action and the impropriety of the outcome given that Fitness Anywhere, as made plain by its Aug. 2022 trademark assignment, had assigned its rights before it initiated the UDRP based thereon. (Doc. 82 at 5:3-5.)

[5] Indeed, even the domain name press recognized that such a move (*viz.,* filing the Virginia lawsuit months after the Arizona case had been filed) was rightfully characterized as "gamesmanship" (Ex. 1 at ART-27, ART-31) that was "odd" (*id.* at ART-10, 16).

[6] Plaintiff made no effort to intervene in the AZ case. Plaintiff has pointed to its communications with Judge Logan before whom the Fitness Anywhere case is pending. (Doc. 82 at 2:19-28; Doc. 89 at 2.) Despite that improper communication with Judge Logan's chambers in violation of the Local Rules, what is clear is that Plaintiff took no effort whatsoever to intervene in the Fitness Anywhere case and instead, knowledgeable of the favorable precedent in the Fourth Circuit, proceeded to file a case in Virginia which ran counter to the first-to-file rule and disregarded the requirement that such court have personal jurisdiction over Ming, which it did not.

[7] *RODE Microphones, v. Feam,* 23-01082, *3 [ECF 35] (C.D. Cal. Jul. 31, 2023) (noting that the first-to-file "doctrine seeks to conserve limited judicial resources and avoid duplicate or inconsistent judgments on similar issues") (citing *Kohn Law Grp. v. Auto Parts Mfg. Miss.,* 787 F.3d 1237, 1240 (9th Cir. 2015), and *Treasure Garden v. Red Star Traders,* 2013 WL 12121989, *5 (C.D. Cal. 2013) (observing that "[e]fficiency is lost, and judicial resources are wasted, where

Secondly, Plaintiff knew that there was personal jurisdiction over Ming in Arizona and absolutely no link between Ming and Virginia to support personal jurisdiction; yet, in an effort to avoid an adverse outcome, Plaintiff filed the Virginia lawsuit. That is, Plaintiff, in violation of the first-to-file doctrine, shrewdly filed in a court without personal jurisdiction in an effort to avoid the established *GoPets* precedent since the Fourth Circuit does not follow it and, bizarrely, would allow a trademark owner who did not even conceive or use of a trademark at the time of registration of a domain to later come along and seize the domain from an innocent third party, like Ming, who can be analogized to be a holder in due course and should rightfully be protected from such shenanigans. *Prudential Ins. Co. v. Shenzhen Stone Network Info.,* 58 F.4th 785 (4th Cir. 2023) (indicating Fourth Circuit non-adherence to *GoPets*). Plaintiff also wholly disregarded established precedent that if a mark owner is able to obtain personal jurisdiction over an individual registrant in any district at the time a complaint is filed, such as what existed with respect to Ming and Arizona at the time Plaintiff filed the Virginia action, then the mark owner, contrary to what Plaintiff did, may not proceed *in rem* against the infringing domain name.[8] Thankfully, the sister court in Virginia saw through this illegitimate subterfuge and transferred the case to this Court, finding (i) absolutely no personal jurisdiction over Ming and (ii) the existence of a prior-filed case. (Doc. 59.)

<u>Plaintiff Pays No Heed to this Court's Cautionary Orders and Engages in Sharp, Unprofessional Conduct and the Filing of a Frivolous, Objectively Unreasonable, in Fact and Law, Lawsuit</u>: From the moment Plaintiff set foot in Arizona, it failed to heed this Court's sound call to let this baseless and frivolous loser of a case go and instead engaged in an obstinately trudged path which led to an exceptionally rare occurrence: a *sua sponte* dismissal with prejudice. Specifically, Plaintiff's opening salvo in this Court was the filing of a groundless motion for preliminary injunction. (Doc. 68.) In the filing, Plaintiff, surely to provide a fig leaf covering the

---

multiple actions," with substantially similar claims and parties, "continue simultaneously")).

[8] *United Biomedical v. UBI-Global Group.Com,* 23-01088, *2-3 (D. Ariz. Oct 19, 2023) ("owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located ***if*** … the owner (I) is ***not*** able to obtain *in personam* jurisdiction"]) (quoting 15 U.S.C. §§ 1125(d)(2)(A)-(B); Ex. 1 at ART-28.

4

shortcomings of its decrepit legal and factual arguments, chose to engage in name calling, referring to Ming as a "cyber-pirate" (*id.* at 2:7, 6:4, 6:17-20, 6:25-27, 7:3-5, 7:7-9, 7:23-26, 9:8-9, 9:14-15, 11:13-15). Plaintiff also falsely represented that Ming had "filed with this Court a sworn pleading admitting cyber-piracy" (*id.* at 2:9-10) when no such thing happened.[9] The unprofessional conduct of Villeneuve continued unabated during the Rule 26(f) process, where he again opened up his box of insults and hurled them at Ming within the four corners of the Rule 26(f) report. (Doc. 80 at 9:7-19 [referring to Mr. Ming as a "cyber-pirate"], 8:14-16 [calling Ming a "false party"].) Plaintiff, through the unprofessional Villeneuve and without a shred of evidence, accused Defendants in the Rule 26(f) report of all sorts of nondescript bad faith acts "justifying" a litany of utterly laughable (and frivolous) motions. (*Id.* at 5:18-8:12.)

In a manner akin to putting up a billboard with flashing lights, this Court prudently cautioned Plaintiff that it "d[id] not appear [that Plaintiff could] state a claim on which relief might be granted" and, in an effort to prevent Plaintiff from continuing to dig its own grave, "required [it] to file a statement setting forth why its claim is viable in light of Ninth Circuit authority." (Doc. 82 at 4:13-20.) The Court also instructed Plaintiff to explain Villeneuve's contradictory, conflicting statements[10] concerning ownership of the TRX marks. (*Id.* at 5:9-13.)

Plaintiff sped past the billboard and, consistent with the no holds barred approach to litigation and eschewing of the truth, did not follow this Court's instructions, with such wholesale ignoring of the Court leaving the lay press shocked. (Ex. 1 at ART-18 [noting that Plaintiff "simply ***ignored*** the judge's request that it explain the relationship between Fitness Anywhere and JFXXD TRX and who owns the intellectual property"] {emphasis in original}.)

---

[9] The falsity of Plaintiff's contention concerning the content of Ming's "sworn pleading" was noted in the lay press. (Ex. 1 at ART-23.)

[10] The undersigned was not born yesterday. The conflicting statements were surely made by Villeneuve in a self-serving manner in order to obtain the outcome Plaintiff desired, irrespective of the illegitimacy of the positions taken by Plaintiff and Fitness Anywhere (also represented by Villeneuve). Nothing in the record points to any other logical explanation, nor could the Court find any "explanation" for such conflicting statements. (Doc. 88 at 4:17-19 ["There is no explanation how an attorney might be unaware that his client had declared bankruptcy and sold off all the property relevant to the attorney's work."].) Villeneuve's claim of extensive experience, represented to the bankruptcy court (**Ex. 7** [In re TRX Holdco, 8:22-bk-10948-SC, June 17, 2022, Doc. 61 at 10-13]), belies any explanation other than vexatious practices.

5

Notably, this Court gave Plaintiff a clear indication that Plaintiff would not be able to state a plausible claim for relief for cybersquatting unless it remedied extensive errors and shortcomings in its original (Doc. 1) and first amended complaints (Doc. 4). Yet, despite this clear roadmap that the Court gifted to Plaintiff, Plaintiff paid the Court no heed, wasted the Court's time and resources, and continued stubbornly on with the pleading of a prime example of untenable vacuity that constituted the second amended complaint. Plaintiff led off with filing a statement (Doc. 83) which provided exceptionally "incoherent" arguments that "twisted [Plaintiff] into knots [in its vain attempt to] try[] to explain … how the 2022 sale of the domain trx.com [wa]s a new registration." (Ex. 1 at ART-17). Thereafter, Plaintiff, on Feb. 21, 2024 and again through Villeneuve, filed a second amended complaint. (Doc. 86.) As with its prior at bats, the pleading was devoid of "plausible allegations establishing the registration of <trx.com> lapsed", which would, under *GoPets,* preclude Plaintiff's "claim." (Doc. 88 at 3:11-17.) That is, knowing that what it had drafted for inclusion in the second amended complaint would not get the Plaintiff past the courthouse door due to its frivolousness and objective unreasonableness in its factual and legal components, Plaintiff bullheadedly filed it anyway. This glaring lapse of judgment did not go unnoticed by the Court. (Doc. 88 at 3:17-18 ["Plaintiff was given the opportunity to allege additional facts but was unable to do so."].)

Plaintiff's Counsel *Ex Parte* Communication: But, that was not all. Plaintiff, through Villeneuve, failed to explain his contradictory statements regarding ownership of the TRX marks (Doc. 88 at 3:19-20), even though the Court made clear that was a requirement with any second amended complaint (Doc. 82 at 5:9-13; Ex. 1 at ART-9, 11, 12 [stating, in an article entitled "Judge [Silver] in TRX.com lawsuit probably won't be happy," that Plaintiff "didn't try to explain the relationship between the parties" and noting that the Court-requested statement "hasn't been posted to PACER"]). Plaintiff instead, in violation of litigation ethics, sent a rambling, "largely indecipherable" (Doc. 88 at 4:13) improper ***ex parte*** communication to the Court. (*id.* at 5:6-12). In the letter, Villeneuve misleadingly claims that, as of Oct. 2022, he was not aware that Fitness Anywhere had declared bankruptcy and sold its assets. (Doc. 89 at 1.) That is untrue or, at best for Villeneuve, misleading. Mr. Villeneuve was nominated as special

IP counsel on June 17, 2022 (Ex. 7) in a bankruptcy case (*In re TRX Holdco, LLC*, 8:22-bk-10948-SC [Bankr. C.D. Cal.]) which was jointly administered with the bankruptcy of none other than Fitness Anywhere. Notably, Villeneuve's June 19, 2022 application as special IP counsel was identified on the face thereof as "affecting both debtors" (i.e., TRX Holdco, LLC ***and*** Fitness Anywhere); yet, Villeneuve claimed to the Court in his *ex parte* communication (Doc. 89) that in Oct. 2022, four months later, he essentially had no idea Fitness Anywhere had even filed bankruptcy. If Villeneuve were to be believed, which is a risky venture, that would mean that in June 2022, he was appointed IP counsel in a bankruptcy proceeding involving both Fitness Anywhere and TRX Holdco[11] in which the relevant IP (i.e., the TRX marks) were sold to Plaintiff and yet Villeneuve amazingly had no idea, until 4 months later in the fall of 2022, that Fitness Anywhere had, through that bankruptcy proceeding, been acquired (Doc. 89 at 1 ¶ B) or that there had been "any ownership change" (*id.* at 1 ¶ C). The untruth that Villeneuve essentially did not know about Fitness Anywhere's bankruptcy or the sale of the trademark assets as of Oct. 2022 is belied further by his fee application with the bankruptcy court in which he seeks payment for "services provided [] in the Debtors' [TRX Holdco, LLC ***and Fitness Anywhere, LLC***] cases [which] were integral to the ***sale of [such] Debtors' business***. (**Ex. 8** at 5:23-24.) The first page of the fee application, which was for, among other things, payment of Villeneuve for his services, authorized special counsel services to none other than Fitness Anywhere, a company who Villeneuve falsely claims he had no idea, two months after the fee application, had filed bankruptcy. (*Id.* at 2:2-4.) In fact, the invoices submitted by Villeneuve's then law firm, Duane Morris, are addressed to, you guessed it, "FITNESS ANYWHERE, LLC D/B/A TRX." (*Id.* at 12, 13.) Thus, the filings with in bankruptcy court tear asunder Villeneuve's falsity-riddled claim that he essentially had no idea in Oct. 2022, when he filed the UDRP for Fitness Anywhere, that it had filed bankruptcy or that its trademark assets had been sold.

**III.    Legal Argument**
    a.  <u>Legal Standard</u>

---

[11]Ex. 7 at 10:8-12 [declaring that "TRX Holdco, LLC [] ***and Fitness Anywhere LLC***, … , the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases have requested that [Duane Morris, Villeneuve's firm] serve as their IP counsel in connection with their chapter 11 bankruptcy cases that the Debtors commenced on June 8, 2022[.]"].)

"Federal Rule of Civil Procedure 54 provides that any 'claim for attorneys' fees and related nontaxable expenses must be made by motion.'" *ThermoLife Int'l v. Bpi Sports*, 20-02091, *2 [ECF 75] (D. Ariz. May 19, 2023) [*Thermolife I*] (quoting Fed. R. Civ. P. 54(d)(2)). "Unless a statute or a court order provides otherwise, the motion must: **(i)** be filed no later than 14 days after the entry of judgment; **(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award; **(iii)** state the amount sought or provide a fair estimate of it; and **(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." *Id.* (quoting Fed. R. Civ. P. 54(d)(2)(B).) Rule 54 also provides that courts may establish their own local rules to resolve fee-related issues." *Id.* at *3 (citing Fed. R. Civ. P. 54(d)(2)(D)). "In this District, [] LRCiv 54.2 applies to requests for fees and related non-taxable expenses." *Id.* "Under LRCiv 54.2, '[a] party requesting an award of attorneys' fees must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount.'" *Thompson v. Ariz. Movers & Storage*, 2018 WL 2416187, *1 (D. Ariz. 2018) (citing LRCiv 54.2(c)). LRCiv 54.2(d), an extensive rule, also requires the moving party to attach certain supporting documentation to any request for attorneys' fees: "(1) a statement of consultation, (2) a complete copy of any written fee agreement, (3) a task-based itemized statement of time expended and expenses incurred, and (4) an affidavit of moving counsel." *Rindlisbacher v. Steinway & Sons,* 2021 WL 2434207, *2 (D. Ariz. 2021) (citing LRCiv 54.2(d)).

The Court has discretion to award reasonable attorney fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "Where a plaintiff fails to establish a claim [] under the Lanham Act, a court may award attorneys' fees to the defendant in 'exceptional cases.'" *Facebook v. OnLineNic,* 19-07071, *31 [ECF 225] (N.D. Cal. Mar. 28, 2022) "An 'exceptional' case is 'one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Ratchford v. Scottsdale Nights*, 21v-01041, *3 [ECF 28] (D. Ariz. Sep. 27, 2023) (quoting *Octane Fitness v. ICON Health & Fitness,* 572 U.S. 545, 554 (2014))). "In particular, 'exceptionally meritless claims' or claims brought in 'bad faith' warrant an award of attorneys' fees." *RJ Control Consultants v. Multiject*, 16-10728,

*7 [ECF 135] (E.D. Mich. Jan. 16, 2024) (quoting *Bliss Collection v. Latham Cos.*, 82 F.4th 499, 516 (6th Cir. 2023) (quoting *Octane*, 572 U.S. at 555))).

  b. <u>Defendants are Eligible and Entitled to an Award of Fees and Non-Taxable Expenses.</u>

  Pursuant to LRCiv 54.2(c), Defendants submit that they are eligible and entitled to an award of fees and non-taxable expenses, and that the amount requested is reasonable.

  *Eligibility*: Pursuant to LRCiv 54.2(c)(1), Defendants are eligible to seek an award of attorneys' fees and non-taxable expenses under 15 U.S.C. § 1117(a), which is the statutory authority that provides this Court with discretion to award reasonable attorney fees to a prevailing party in "exceptional cases." Defendants prevailed in this matter as is evident from the Feb. 26, 2024 Order in which the Court, in a rare move, *sua sponte* dismissed Plaintiff's Second Amended Complaint with prejudice (Doc. 88), with such order constituting the judgment on which the request for attorneys' fees is based. The nature of the case is a baseless claim of Defendants' violation of the ACPA,15 U.S.C. § 1125(d). (Doc. 86 at 19-20.) Defendants prevailed on Plaintiff's sole fruitless claim. There are no defenses to which Defendants did not prevail since this Court saw right through Plaintiff's flimsy contentions and, without Defendants even having to file a motion to dismiss, *sua sponte* dismissed with prejudice the Second Amended Complaint. Further, the relevant legal authority governing the standard by which the Court should determine eligibility is set forth *supra, viz.,* 15 U.S.C. § 1117(a).

  *Entitlement*: Defendants' entitlement to an award of attorneys' fees and non-taxable expenses under 15 U.S.C. § 1117(a), which is examined in greater detail *infra*, is determined by the various non-exclusive factors set forth by the Supreme Court in *Octane Fitness* and Ninth Circuit precedent. Specifically, the interpretation of this statute is established by the Supreme Court in *Octane Fitness* case and its progeny in the Ninth Circuit, including **(i)** *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179, 1181 (9th Cir. 2016) (holding that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional") (citing *Octane Fitness*, 134 S.Ct. at 1756), and **(ii)** *Sazerac Co. v. Fetzer Vineyards,* 17-16916/17-17511, *7 (9th Cir. Oct 03, 2019) (identifying "nonexclusive factors" to consider in determining propriety of award of attorneys'

fees under 15 U.S.C. § 1117(a) as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence") (quoting *Octane Fitness*, 572 U.S. at 554 n.6 (in turn quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)).

Furthermore, pursuant to LRCiv 54.2(c)(2), Defendants, if entitled to an award of attorneys' fees in the first case, are also entitled to fees incurred in preparing a motion for attorneys' fees and any reply brief filed after any response filed by Plaintiff. *Thermolife I*, *35 ("Courts in this circuit have specifically allowed for exceptional case movants to seek such motion/reply incurrence fees.") (citing *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."), and *Gary v. Carbon Cycle Ariz.*, 398 F. Supp. 3d 468, 479 (D. Ariz. 2019); *see also Amusement Art v. Life Is Beautiful*, 14-08290, *15 (C.D.Cal. May 23, 2017) (awarding part of attorneys' fees requested related to preparing motion for fees). Extension of the award to cover motion incurrence fees is justifiable, especially here where, as required by LRCiv 54.2, Defendants consulted with Plaintiff beforehand in an attempt to avoid the motion incurrence fees and Plaintiff's unsurprising and groundless intransigence prevented that. (**Ex. 9** [statement of consultation].)[12]

Turning now to the pertinent factors set forth in *Octane Fitness* and *SunEarth*, there is absolutely no doubt that this case is exceptional and an award of attorneys' fees and non-taxable expenses is warranted. As this Court is well aware, Plaintiff had no chance of success in this case, rendering this case squarely within the confines of the frivolousness and objective unreasonableness factors of case exceptionality. Plaintiff, time and again, through its original complaint (Doc. 1), first amended complaint (Doc. 4), and then the second amended complaint (Doc. 86), "fail[ed] to 'raise[] debatable issues of law and fact.'" *ThermoLife Int'l v. Am. Fitness Wholesalers*, 18-04189, *11 [ECF 34] (D. Ariz. Jan. 10, 2020) [*Thermolife II*] (noting "[a] case is exceptional when, as here, it fails to 'raise[] debatable issues of law and fact'") (quoting

---

[12] The motion incurrence fees were substantial since the local rule requires extensive effort and Plaintiff engaged in innumerable litigation misdeeds of varying types that required a detailed recitation in order for the Court to fully appreciate the exceptional nature of this case.

*Stephen W. Boney v. Boney Servs.,* 127 F.3d 821, 827 (9th Cir. 1997)). Indeed, Plaintiff took "indefensible and unsubstantiated litigation positions" that were "devoid of legal authority or factual support" and "unreasonable on account of preclusive earlier court rulings" in which the Court warned Plaintiff that to do so would risk dismissal with prejudice. *Focus Prods. Grp. Int'l v. Kartri Sales,* 15-10154, *14 [ECF 539] (S.D.N.Y. June 5, 2023). There was not a single fact set forth in any of Plaintiff's pleadings that would support a credible basis for diverting from long-established *GoPets* precedent holding subsequent owners of domain names, such as Defendant Ming who acquired Defendant trx.com in 2022 after it was registered in 1999 approximately 4 years before the birth of Plaintiff's trademark rights, have all rights enjoyed by original registrants. In the face of clear,  directly controlling precedent that rendered Plaintiff's positions "objectively unreasonable"[13] and with "[P]laintiff ha[ving] no reasonable or legal basis to believe in success on the merits", this is the prototypical case when "an action [with a prevailing defendant] is exceptional under the Lanham Act".[14]

Moreover, the manner in which Plaintiff litigated, which is a germane factor for determining if a case is exceptional (*Octane Fitness*, 572 U.S. at 554 [noting that the "unreasonable manner in which the case was litigated" factors into the exceptionality determination]), militates in favor of awarding fees. As an initial matter, Plaintiff engaged in forum shopping that ran afoul of the first-to-file rule. Such conduct is sanctionable and justifies an award of fees under 15 U.S.C. § 1117(a). *Citi Trends, Inc. v. Coach, Inc*., 17-cv-01763, *4, 9, 13 [ECF 38] (D. Md. May 17, 2018) (awarding exceptional case fees where losing party, the plaintiff, by "filing suit in this Court", engaged in "an improper act of forum shopping") (citing *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 338 (D. Md. 2011) (in turn quoting *Learning Network, Inc. v. Discovery Commc'ns, Inc.,* 11 Fed. App's. 297, 301 (4th Cir.

---

[13] *Tresona Multimedia v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652-54 (9th Cir. 2020) (reversing denial of an award to defendants where they "prevailed across the board" on procedural issues below and on a fair-use defense on appeal and plaintiff's arguments were objectively unreasonable in light of binding precedent which indicated conduct which "did more than simply pursue an aggressive litigation strategy"); *cf. Tobinick v. Novella*, 884 F.3d 1110, 1117-18 (11th Cir. 2018) (noting that a "case will not qualify as exceptional … merely because one side has zealously pursued or defended its claim, especially [where, in contrast to this case, there is] no directly controlling precedent").

[14] *Thermolife II*, *12 (quoting *Secalt v. Wuxi Shenxi,* 668 F.3d 677 (9th Cir. 2012)).

2001))). Further, as in *Thermolife II*, a plaintiff inclined to file baseless claims was warned by the Court, through the dismissal of a prior complaint, to think carefully before passing the frivolous line by filing a defective amended pleading and yet, like Plaintiff at bar, disregarded the Court's sage advice and filed what ultimately was found to be a frivolous claim that failed to "raise[] debatable issues of law and fact." *Thermolife II,* *12. Coincidentally, Plaintiff, like the *Thermolife II* plaintiff, eschewed clear guidance proffered by the Court. There, Judge Teilborg found it "most egregious [] that the Court laid out what Plaintiff needed to do to properly plead its … claims"; yet, the plaintiff failed to take the bait. *Id*. Plaintiff at bar also stuck with the "most egregious" path by paying no heed to this Court's Order (Doc. 82) and failing to provide anything within the four corners of the second amended complaint tantamount to a "reasonable or legal basis to believe in success on the merits." *Id.* By "simply fail[ing] to cure the deficiencies that the Court outlined in its order [Doc. 82] dismissing Plaintiff's [] claims", Plaintiff cloaked itself with the "objectively groundless, and thus, frivolous" cloak which warrants an award of fees and non-taxable expenses for Defendants. *Id.* *12-13 (citing *Secalt,* 668 F.3d at 687 and *Express v. Forever 21*, 2010 WL 11512410 (C.D. Cal. 2010)).

Plaintiff here fell into the same trap as the *Thermolife II* plaintiff of ignoring its Rule 11 obligations and simply filing an amended pleading in order to stay in the game when, in good faith, it should have thrown in the towel. Judge Teilborg prudently pointed out that "leave to amend is not an invitation to amend", and amendment should only be pursued if the plaintiff can steer its litigation ship clear of "frivolous" obstacles and "raise debatable issues of law and fact." *Thermolife II,* *13. "[I]t is objectively unreasonable that the facts Plaintiff pled [in the second amended complaint, Doc. 86] would lead it to believe it had a reasonable basis to believe it could attain success on the merits." *Id.* Plaintiff's undertaking such a "no holds barred" approach to litigation, despite being cautioned by this tribunal to not do so, justifies an award of fees.[15]

---

[15] *Warren Techn. v. UL, LLC*, 18-21019, *5 [ECF 80] (S.D. Fla. Dec. 17, 2020) (granting defendants' motion for attorneys' fees under 15 U.S.C. § 1117(a) in part since "when the Court granted Tutco's first Motion to Dismiss, finding that Warren's Complaint failed to state a claim, the Court included cautionary language to Warren that expressed doubt about whether Warren would be able to amend its pleadings to state a claim. [] Despite this, Warren proceeded to file an Amended Complaint, which was dismissed for essentially the same reasons").

And, as indicated *supra*, the failure to follow the Court's advice given before the filing of the second amended complaint is not Plaintiff's sole misdeed. Plaintiff hitched to its unreasonable and frivolous lawsuit, fully untenable under *GoPets,* misleading, if not outright false, statements, both in its *ex parte* communication to the Court regarding when it knew about Fitness Anywhere's bankruptcy, as well as with respect to the falsities concerning TRX trademark ownership made by Plaintiff's counsel to the UDRP panel. *Volkswagen Group of Am., Inc. v. Varona*, 19-cv-24838, *41 [ECF 103] (S.D. Fla. May 18, 2021) (finding case exceptional and awarding fees where, as here, "Defendants have made numerous false statements under oath" and "took frivolous and/or questionable positions").  Plaintiff also sent *ex parte* communications, which is a violation of the ethical rules. Such conduct, which cannot be characterized in any way other than "unethical or unprofessional," falls squarely within the confines of egregious conduct which, in this circuit, warrants imposing an award of attorneys' fees and non-taxable expenses on the party guilty of such conduct.[16]

Further, Plaintiff, on multiple occasions, failed to follow this Court's clear order to provide an explanation for conflicting statements concerning TRX trademark ownership. Such "flouting" of court orders is anything but normal and rather exceptional. *Focus Prods.,* *13 (awarding fees when, *inter alia,* the losing party, "[o]n multiple occasions, [] flouted prior court rulings"). Joined with this is the bad-faith filing of a lawsuit in Virginia when (i) there was no personal jurisdiction over Ming, (ii) the Lanham Act [15 U.S.C. § 1125(d)(2)(A)-(B)] precluded filing the *in rem* lawsuit in Virginia in view of this Court clearly having personal jurisdiction over Ming, and (iii) there was a prior-filed lawsuit. *Gust, Inc. v. AlphaCap Ventures*, 15cv6192 (DLC), 16cv1784 (DLC), *2 (S.D.N.Y. Jul. 06, 2017) (noting attorneys' fees warranted where losing party "had pursued the litigation in bad faith").

---

[16] *Teetex LLC v. Zeetex, LLC*, 20-07092, *4 [ECF 79] (N.D. Cal. July 5, 2022) (noting "Courts awarding attorneys' fees due to the losing party's unreasonable manner of litigation generally have pointed to egregious behavior", and "'[e]gregious behavior' supporting an award for litigation misconduct 'generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings.'") (quoting *Pop Top Corp v. Rakuten Kobo Inc.,* 2022 WL 267407, slip op. at *6 (N.D. Cal. Mar 28, 2022) (in turn citing *Vasudevan Software v. Microstrategy,* 2015 WL 4940635, *5 (N.D. Cal. 2015)), and *Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.,* 2021 WL 75755, *4 (N.D. Cal. 2021)).

Lastly, Plaintiff's "counsel's behavior [throughout this action] continued to be less than civil", with Villeneuve calling Ming, in multiple pleadings as indicated *supra,* a pirate and a false party, along with threatening the kitchen-sinking of various motions against Defendants in the Rule 26(f) report. *Lanard Toys Ltd. v. Toys "R" Us,* 15-00849, *87-88 [ECF 529] (M.D. Fla. Aug. 20, 2021). Such conduct simply is icing on the exceptionality cake and further tilts the scales in Defendants' favor in support of an award of attorneys' fees and non-taxable expenses.

When examining the entirety of the misconduct here, an award of attorneys' fees and non-taxable expenses "advance[s] considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6. With (i) baseless litigation that was pursued despite this Court's warning that wasted this court's time and resources, (ii) *ex parte* communications, (iii) unreasonable litigation tactics including resource-wasting forum shopping and disregard of the Lanham Act's requirement to bring suit here not in Virginia which unnecessarily multiplied the fees and required the incurrence of non-taxable expenses, (iv) insulting of Defendants that went beyond zealous advocacy, and (v) misleading, if not untrue, statements to the Court concerning alleged lack of knowledge of Fitness Anywhere's trademark assignment and bankruptcy, the award requested herein "accomplishes the public objective of punishing and deterring malicious conduct" to prevent future parties from committing the same misdeeds. *John Bean Technologies Corporation v. B GSE Group, LLC*, 17-cv-00142, *6 [ECF 340] (D. Utah Sep. 21, 2023); *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.,* 18-cv-02342, *4 (D. Nev. Jul. 11, 2022) (awarding fees as a "deterrence [which] is a factor here [] to deter [losing plaintiff] from repeating its unreasonable litigation tactics" and "objectively unreasonable [] strategies" that "went beyond zealous advocacy", "unnecessarily multiplied the fees and costs that [defendant] was forced to incur, and wasted this court's time and resources"). Should Plaintiff wish to avoid paying the proverbial piper, it should post a bond that accounts as well for the fees that Defendants will incur in defending against its frivolous appeal. *BRPS LLC v. Tenney Realty Servs.,* 18-08249, *2-3 (D. Ariz. Jun 19, 2020) (noting that "some federal courts have concluded the size of a [] bond can be increased to include 'additional attorneys' fees, which the appellate court may award'", but declining to do so in this particular case since the appeal, unlike

Plaintiff's "is not frivolous") (citing in part *Sazerac Co. v. Fetzer Vineyards*, 2018 WL 620123, *4 (N.D.Cal. 2018) (setting bond amount to include "additional attorneys' fees" on appeal)).

c. The Requested Award of Attorneys' Fees Is Reasonable.

Pursuant to LRCiv 54.2(c)(3), Defendants submit that the requested award of attorneys' fees totaling **$36,389** incurred to date [$22,784 for Bycer and Marion, PLC and $13,605 for MotoSalas Law, PLLC], **$1,352.27** in non-taxable expenses [all incurred through Bycer and Marion, PLC], plus an *estimate* of **$3,500** of fees for any reply to Plaintiff's response to this motion,[17] is reasonable based on the statements contained in the supportive declarations, submitted pursuant to LRCiv 54.2(d)(4), of Kenneth Motolenich-Salas (**Ex. 10**) and Michael Marion (**Ex. 11**) which examined pertinent reasonableness factors, *viz.,* the factors set forth in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975)). *Thermolife I*, *8 (outlining *Kerr* factors in context of defendants' prevailing against plaintiff's frivolous lawsuit).[18] Specifically, the time and labor required (*Kerr* first factor) was circumscribed, with every instance of Defendants' expenditure of an appreciate amount uniformly the result of Plaintiff's vexatious antics, such as the filing of a frivolous motion for preliminary injunction requiring a response, obtaining transfer of a case that should have been brought in this Court in the first place, addressing the ridiculous listing of contemplated motions in the Rule 26(f) report, and having to file this motion, which required substantial effort in view of the Deuteronomic LRCiv 54.2, after Plaintiff refused to pay the attorneys' fees incurred in defending this frivolity. Regarding the second *Kerr* factor (novelty and difficulty of questions involved), "the frivolous, vexations, and unreasonable manner in which Plaintiff[] litigated this case-engaging in apparent forum shopping and pursuing [its] meritless claims in two districts[]-created unnecessary procedural

---

[17] Defendants reserve the right to provide in the reply the exact dollar amount associated with fees incurred in the reply along with substantiating billing statements. Defendants include the reply estimate here, along with the motion incurrence fees, to allow Plaintiff to object to the portion of the award associated with the reply and this motion and Defendants to recover such fees if the Court grants the motion. *Pop Top,* *6 (denying inclusion of motion incurrence fees and reply fees in the award of attorneys' fees since movant "could and should have requested these fees as part of its motion, including an estimate of time for its reply", yet did not).

[18] Only those *Kerr* factors which Defendants contend are relevant are discussed. As this Court knows, not every factor is relevant in every case. *Thermolife I*, *8-28 (noting, in extensive discussion of *Kerr* factors, that some nonetheless did not apply).

difficulties for Defendant[s]" (*Thermolife I*, *14), such as travel to VA for a hearing on the motion to transfer. Thirdly, with respect to the skill requisite to perform legal services properly (*Kerr* third factor) and the experience, reputation, and ability of the attorneys (*Kerr* ninth factor), the limited hours spent on this case by Defendants demonstrates that Defendants' counsel had the requisite skill to perform the legal services properly. Regarding the *Kerr* customary fee factor, the hourly rates charged by the legal professionals (undersigned: $425/$450; Michael Marion: $395; paralegals: $185) are generally lower than the customary rates. *Thermolife I*, *25 (giving range of hourly rates of $340-$705 for attorneys in the 2019-2022 timeframe). The next relevant *Kerr* factor, amount involved and results obtained, favors Defendants. "Defendant[s] w[ere] faced with a meritless, vexatious lawsuit accusing them of [cybersquatting]" and, "[a]s a result, Defendant[s] w[ere] forced to defend [themselves] against Plaintiff's claim[] before [two] different courts spread across the country." *Thermolife I*, *27. "Defendant[s] w[ere] ultimately successful, as Plaintiff's claim[] w[as] not only dismissed, but dismissed with prejudice," with Defendants "successfully establish[ing] that Plaintiff's claim[] w[as] frivolous." *Id.* As such, a weighing of the relevant *Kerr* factors demonstrates the reasonableness of the amount requested.

          d.    <u>Defendants Have Complied with the Other Requirements of LRCiv 54.2.</u>

Local Rule 54.2 sets out a litany of requirements that a prevailing party must comply with in order to have the Court even entertain the request for attorneys' fees. These requirements are fully complied with by this submission. First, Defendants attach hereto as Ex. 9 a statement of consultation which certifies that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues related to attorneys' fees. The parties consulted through their respective counsel on Feb. 28, 2024. Defendants, via email attached as Exhibit A to Ex. 9, requested that Plaintiff pay the incurred fees, and Plaintiff refused, indicating it would file a Quixotic appeal. Secondly, Defendants' counsel have attached to their respective declarations fee agreements and all billing records (*viz.*, task-based itemized statements of fees and expenses. (Exs. 10, 11.) A review of the statement of fees and expenses reveals that it complies in all respects with LRCiv 54.2(e).

### IV.    CONCLUSION

"In a host of ways, [Plaintiff prosecuted] this case in an objectively unreasonable, thoughtless, and unprofessional manner." *Focus Prods.,* *9. No one could review the record in this case and find otherwise. Indeed, "[c]ases found 'exceptional' based on the unreasonable manner in which the losing party conducted itself in litigation have relied on comparable, and indeed less glaring, records of vexatiousness." *Id.* at *15. Plaintiff ticked every box on the exceptionality checklist by, *inter alia,* engaging in "many forms of misconduct", such as " vexatious, unjustified, and otherwise bad faith litigation" undertaken in a "frivolous suit" that "evinces exactly the kind of 'unreasonable' litigation that justifies an award of attorneys' fees." *Id.* at *17-18 (citations omitted). The zenith of Plaintiff's exceptional behavior was undertaking a litigation position that "was not reasonable in light of *GoPets*", which is conduct that has been sanctioned by this Court. *Dent v. Lotto Sport Italia S.p.A.,* 17-cv-00651, *18 [ECF 120] (D. Ariz. Jan. 25, 2021) (awarding fees under 15 U.S.C. § 1117(a) since, among other things, the losing party's position was counter to "the published decision in *GoPets*[, which] is the precedential law in the Ninth Circuit" and "the *GoPets* opinion does not support Defendant's attempts to escape its reach based on the facts presented in this case" such that "this Court finds that Defendant's defense was without merit and this case is exceptional") (citing *Hart v. Massanari*, 266 F.3d 1155, 1169 (9th Cir. 2001)). Given the extraordinary nature of this case which involved a baseless claim of ownership by Plaintiff of a domain rightfully owned by Mr. Ming, evasiveness and contradictory statements by Plaintiff's counsel bordering on subterfuge, and vexatious litigation conduct such as insulting Defendant Ming and *ex parte* communications with the Court, Defendants contend this is an exceptional case under 15 U.S.C. § 1117 which justifies an award of Defendants' attorney fees of **$36,389** incurred to date, **$1,352.27** in non-taxable expenses, plus an *estimate* of **$3,500** in attorneys' fees incurred in preparing any reply to Plaintiff's response to this motion.

RESPECTFULLY SUBMITTED this 21st day of March, 2024.

MotoSalas Law, PLLC:

By:*/s/Kenneth M. Motolenich-Salas*
Kenneth M. Motolenich-Salas (Bar No. 027499)
MotoSalas Law, PLLC
16210 North 63rd Street
Scottsdale, AZ 85254
Telephone: 202-257-3720
E-mail:      ken@motosalaslaw.com
*Attorney for Defendants trx.com and Loo Tze Ming*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 21st day of March, 2024, I electronically transmitted the

3 foregoing document and all exhibits thereto to the Clerk's Office using the CM/ECF System

4 for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants of record

5 in this matter.

6 By:  */s/ Kenneth M. Motolenich-Salas*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28