Alain Villeneuve (Bar No. 58664)
Admitted *pro hac vice*
Senior Vice-President & General Counsel of TRX
1420 Fifth Avenue, Suite 2200
Seattle 98101, WA
Telephone (312) 404-1569
Email: avilleneuve@trxtraining.com

Anjali J. Patel
Tyler Allen Law Firm, PLLC
4201 North 24th Street, Suite 200
Phoenix, AZ 85016
602-904-0765 cell
602-456-0545 main
www.allenlawaz.com

*Attorneys for Plaintiff JFXD TRX ACQ LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JFXD TRX ACQ LLC, a Florida Limited Liability Company, dba TRX<br><br>Plaintiff,<br><br>v.<br><br><trx.com>, a domain name,<br><br>And Loo Tze Ming, an individual from Malaysia,<br><br>Defendant. | Case No. 2:23-cv-02330-PHX-ROS<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES**<br><br>Judge: Honorable Judge Roslyn O. Silver |

This response is filed in response to a Motion for Attorney's Fees under 15 U.S.C. § 1117(a) which we request to be fully denied. Plaintiff finally gets to discuss this case and further provide below context and evidence to why Plaintiff has good faith belief that the "Ming identity" is fraud. Plaintiff did not forum shop or hide evidence. Instead, Plaintiff

negotiated, drafted a full motion to dismiss the original case, held a meet and confer, and gave a copy to opposing counsels who had long escaped. After informing the first attorneys of this doubt, asking for proof of identity and ownership before jumping in or paying, the first counsels dropped this case and ran to the closest exit. The new counsels linked with *GoPets* misrepresenting the law as transfer rules makes the 2nd Circuit precedential, not *GoPets*. This case is a soap opera due to a likely scamming, cyber-pirate misleading counsel after counsel and now, this Court. The ACPA was designed to protect Courts, brand owners, and litigants from bad faith foreign actors.

I. **The Legal Standard Is "Malicious, Fraudulent, Deliberate or Willful"**

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[The 9th Circuit has] required that a plaintiff show that a defendant engaged in "<u>malicious, fraudulent, deliberate or willful</u>" infringement. See, e.g. , *Lindy Pen Co. v. Bic Pen Corp*. , 982 F.2d 1400, 1409 (9th Cir. 1993), superseded by statute on other grounds , Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218." *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016) (emphasis added). "Thus, [the 9th Circuity] rel[ies] on an interpretation of the fee-shifting provision in one Act to guide our interpretation of the parallel provision in the other. See *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., –– – U.S. ––––, 134 S.Ct. 1749, 1756, 188 L.Ed.2d 816 (2014) (interpreting the Patent Act by relying in part on "the Lanham Act's identical fee-shifting provision")." Id.

The above standard for exceptional circumstances applies to prevailing defendants as well as prevailing plaintiffs under the Lanham Act. See *Stephen W. Boney, Inc. v. Boney Servs., Inc*., 127 F.3d 821, 827 (9th Cir. 1997); *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000). A trademark case where a jury found a party had "intentionally infringed" does not necessarily equate with the malicious, fraudulent, deliberate, or willful conduct that is usually required for a finding of exception. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005). Even deliberate and willful infringement has been found insufficient for an "exceptional" finding absent bad faith. *Quaker State Oil Refining Corp. v. Kooltone, Inc.*,

2

RESPONSE TO MOTION FOR ATTORNEY'S FEES                                    CASE NO. 4:23-cv-02330

649 F.2d 94 (2d Cir. 1981).

Defendant's counsel cites a bizarre lower standard from the sixth circuit. (*RJ Control Consultants v. Multiject*, 16-10728, *7 (E.D. Mich. Jan 16, 2024) quoting *Bliss Collection v. Lathan Cos.*, 82 F.4th 499, 516 (6th Cir. 2023). The standard is not one of bad faith or 'exceptionally meritless claims' but "malicious, fraudulent, deliberate or willful" infringement, one of the highest standards.

## II. The Case is Strong, Cyber-Piracy Exists, and Appeal Will Easily Succeed

Defense counsel calls this filing "a loser of a case that had absolutely no objectively reasonable chance of success under well-established Ninth Circuit precedent." (2:23-cv-02330, Dkt. # 95, page 2/20). This is laughable for multiple reasons. The counsel calls the appeal "frivolous." Id. As detailed below: (a) the case was transferred from Virginia and Supreme Court precedents warrants 2nd Circuit law (*Prudential*) and not 9th Circuit law (*GoPets)* be controlling, (b) extreme poor lawyering in *GoPets* misled the 9th Circuit to ignore the relevant portion of the ACPA, (c) *GoPets* is now 3 to 1 split against this Circuit and the 9th Circuit needs litigation on this issue to clearly reverse, (d) the ACPA jury instructions confirm *GoPets* is not relevant, (e) the amended pleading of Plaintiff was fully responsive under Rule 8.

### a. Prudential Applies To A Transferred Case

This case was filed in Virginia. (1:23-cv-00217, Dkt. #1). It was transferred to Arizona on motion of Defendants and over objection of Plaintiff (1:23-cv-00217, Dkt. # 41, 51, 53, 59). There is a "strong presumption in favor of" Plaintiffs' choice of forum in this District." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). The sole reason for disturbing Plaintiff's choice given in Virginia was the existence of *Ming v. Fitness Anywhere LLC* (2:22-cv-02042). But the law of this case has Judge Steven P. Logan conclude this case and the other "involve different questions of law and fact." (2:23-cv-02330, Dkt. #77 / 2:22-cv-02042, Dkt. # 27) (Consolidation denied). The Supreme Court has been clear, "[W]hen a case is transferred pursuant to 28 U.S.C. § 1404(a), [a court] must apply the choice-of-law rules of the State from which the case was transferred." *Piper Aircraft Co*., 454 U.S. at 243 n.8

3

(citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). The policies underlying *Van Dusen*, as well as other considerations, require a transferee forum to apply the law of the transferor court, regardless of who initiated the transfer. *Ferens v. John Deere Co.*, 494 U.S. 516, 521-532 (1990). The controlling law is the 2nd Circuit, not the 9th Circuit. *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1026 (9th Cir. 2011) is not controlling, *Prudential Insurance Company of America v. Shenzhen Stone Network Information Ltd.*, 2023 WL 367217 (4th Cir. 2023) is the law to this case. The fact a Defendant demanded transfer, then quoted a precedent in the new jurisdiction is the problem. *GoPets* was not the controlling precedent and the 9th Circuit will reverse on this first ground. Stating Plaintiff's ignorance of a non-binding precedent warrants fees here is false. The Counsel who made false representations to this Court is defendant's counsel. It has derailed this case, misled the Court into premature dismissal.

   b. **GoPets Is Amusingly Simple To Reverse**

Assuming arguendo *GoPets* is somehow controlling, nothing will be simpler than overturning this contested precedent. A plain reading of the ACPA, two lines below the nine-prong test resolves the issue. In *GoPets*, a good faith party (Mr. Hise) owned a URL acquired before a brand's existence. He transferred mid-litigation his own URL to his own corporation. The Court to avoid finding bad faith created a "re-registration" dicta to avoid launching the clock on bad faith at transfer.

Congress placed an explicit limitation on the "bad faith" test exactly for such situations linked with transfers, amendment of the registry. The nine prong test to determine bad faith at 15 U.S.C. § 1125(d)(B)(i)(I)-(IX) is narrowed by Section 15 U.S.C. § 1125(d)(B)(ii), which reads in full: "Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and <u>had reasonable grounds to believe</u> that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(B)(ii).

Mr. Hise, once it registered at his new company, had a reasonable ground to believe use of the domain name was fair use or otherwise lawful. Several precedents find bad faith but apply the fair use / lawful defense. *Mirage Resorts, Inc. v. Stirpe*, 152 F. Supp. 2d 1208

(D. Nev. 2000); *Visa International Service Association v. JSL Corporation*, CV-S-01-0294-LRH(LRL) (D. Nev. Oct. 22, 2002). The 9th Circuit will jump on the opportunity to clarify this situation, maintain the notion an interpersonal transfer is not bad faith using Section 1125(d)(B)(ii). Proving an ownership dating to the 20th century is not what the 9th Circuit had in mind.

### c. Challenging A 3-to-1 Split Disfavoring The 9th Circuit It Not Frivolous Litigation

Plaintiff's counsel is the attorney who helped the 7th Circuit establish the fee standard for Lanham Act cases. *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019) (vacating District Judge motion for fees for entry of new *Octane* standard). Assuming Plaintiff is wrong as to I and II above, Prudential Insurance Company of America v. Shenzhen Stone Network Information Ltd., 2023 WL 367217 (4th Cir. 2023) increased the split in Circuits now three to one against the 9th Circuit. The 2nd Circuit sided with the 3rd Circuit in Schmidheiny v. Weber, 319 F.3d 581, 582 (3d Cir. 2003), and the 11th Circuit in Jysk Bed'N Linen v. Dutta-Roy, 810 F.3d 767, 778 (11th Cir. 2015) (It would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a subsequent registration."). Taking great care in addressing the 9th Circuit decision of GoPets Ltd. v. Hise, 657 F.3d 1024, 1026 (9th Cir. 2011), the Circuit where this case was filed noted, "The Ninth Circuit concluded that the defendant was not a cybersquatter, given the minor, nominal change in ownership, because the defendant effectively controlled the subject website both before and after the change in registration." Id. at 1026. Efforts by a litigant to realign the Circuits is not frivolous litigation but a public service. This Court today effectively kills the ACPA as it construes the precedent. Challenging this non-sensical logic is not frivolous.

### d. The 9th Circuit Jury Instructions Are Clear

Movant suggests that filing an ACPA claim with a 20 year old famous brand is frivolous and and unless 25 years of purchase history is plead, bringing the ACPA claims is abuse. This is simply ridiculous. The 9th Circuit's own jury instructions no not include

5

RESPONSE TO MOTION FOR ATTORNEY'S FEES                               CASE NO. 4:23-cv-02330

*GoPets*, as the District and Bankruptcy Courts Manual of Model Civil Jury Instructions, Section 15.31 on the Anti-Cybersquatting (15 U.S.C. § 1125(d)) reads:

> "In 1999, Congress passed the Anti-Cybersquatting Consumer Protection Act ("ACPA"). The ACPA "establishes civil liability for 'cyberpiracy' when a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" DSPT Intern., Inc. v. Nahum, 624 F.3d 1213, 1218-19 (9th Cir.2010). In addition, using in a domain name another's protected mark "to get leverage in a business dispute" is sufficient to establish "bad faith intent." Id. at 1219-20."

What is shocking is how a case transferred is subject to transferor forum law and the person who requested transfer now attacks Plaintiff for not knowing a non-applicable precedent should be applied.

### e. The Amended Pleading Is Perfection

"Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The ACPA is not fraud to be plead with specificity. A statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. Supra*, at 555-556 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, (2002))." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal arguments." *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). Here, Plaintiff was thrown out of Court without having ever seen the Court or the Judge.

After almost a year of filing the complaint, on January 9, 2024, the District Court finally denied Plaintiff's injunction. (2:23-cv-02330, Dkt. # 68). While Defendant has offered no evidence of payment for value, of ownership or continued ownership that would predate

the brand, somehow Plaintiff is tasked pleading the past 20 years, adding fraud-like facts. On January 9, 2024, this Court only gave Plaintiff nine days to "file a statement explaining how the cybersquatting claim is viable."[1] (2:23-cv-02330, Dkt. # 82). Plaintiff has already distinguished GoPets several times. (2:23-cv-02330, Dkt. # 74, 83). TRX® was born as 2005, (2:23-cv-02330, Dkt. #4, ¶ 11), the URL was possibly acquired in April 2022. Nothing suggests rights of Defendant would predate 2005 under the standard. (2:23-cv-02330, Dkt. #4, ¶ 30). Plaintiff pointed to the Defendant's other pleading "… the internet domain name TRX.com was available for sale." (2:23-cv-02330, Dkt. #4, ¶ 30). To add insult to injury, on Monday, February 12, 2024, this Court ordered Plaintiff to file an amended complaint, and some type of statement. (2:23-cv-02330, Dkt. #85). Plaintiff leaving on February 14, 2024 to return on February 27, 2024 for a romantic anniversary was given days to react to this important issue and did his best from the island of Santorini, in Greece. See <u>Exhibit A</u>. Plaintiff amended the pleading, told his assistant across the planet to file the responses after confirming with the clerk of the Court. Today he stands insulted by the Court and this motion for an amendment drafted under Rule 8 which clearly sets up a prima facie case, if proven true at trial will circumvent this Court's expansive read of *GoPets*:

> "Upon information and belief, TRX has owned the TRX® brand at least since 2005. Upon information and belief, in the period of 2018 to 2022, the URL <trx.com> would have expired and returned to the public domain, and in 2022, it was purchased by Defendant from the public domain subsequent to the senior rights of TRX in violation of the ACPA." (2:23-cv-02330, Dkt. # 86, ¶ 23).

The Court dismissing the pleading on a strange summary judgment / dismissal concluded:

> …. But Plaintiff has already argued that registering a publicly available domain name with a registrar costs $19.99 per year. (Doc. 83 at 5). Plaintiff has also argued Defendant purchased <trx.com> for $138,000.

---

[1] The strange direct litigation between the Court and Plaintiff, under urgent conditions while a pleading remains unanswered for a year prevents proper research, litigation, and advocacy warranted by the rules.

(Doc. 68 at 5; Doc. 83 at 7). Thus, the amount paid by Defendant for <trx.com> establishes Defendant did not register <trx.com> in 2022 with a registrar….

That is not what was argued. Plaintiff wrote:

"**GoDaddy.com®** and **4.cn®** both offer the URL **<trx.com.co>** for $19.99/year. This URL is available for "registration" by Plaintiff at a click (and not re-registration under the ACPA). Plaintiff is in the world of fitness and can get <trx.studio> for $139.99, and <trx.coach> for only $19.99. As the URL values crash, business owning these URLs simply let them lapse and return to the public domain. As shown below, this case is a great example of this trend. Defendant admits buying the URL from a registrar in 2022, the same way Plaintiff can own buy <trx.com.co> from GoDaddy®." (2:23-cv-02330, Dkt. #83, page 5/6).

The price of $19.99/year is for the URL <trx.com.co> and not <trx.com>. The Court seems to confuse the two. The Court also assumes this "Ming identity" owns this URL and paid $138,000. Registrars like 4.cn or GoDaddy.com® now commoditize URLs who have dropped in their hands. The pleading is perfect, respects the rules and gives notice that this URL may have well fallen. Buying from a registrant today a two letter URL can be very expensive. The Court in its expediency to disparage Plaintiff threw out the baby with the bath water.

### III.  What Really Happened?

*"Corruption, embezzlement, fraud, these are all characteristics which exist everywhere. It is regrettably the way human nature functions, whether we like it or not. What successful economies do is keep it to a minimum. No one has ever eliminated any of that stuff."* Alan Greenspan

Counsel for the defense argues with a straight face that initiation of the current action was forum shopping, secretive, and that challenging the identity of his client is "derisive and derogatory." (2:23-cv-02330, Dkt. #95, page 2/20). The Court also seems to have reached this strange conclusion. Nothing is farther from the truth and is easily disproved as shown

below.

### a. Plaintiff Initially Believed The "Ming Identity"

Plaintiff jumped in and litigated early into Case No. 2:22-cv-02042 with trust. The collaboration with the first group of counsels was healthy and designed to reach resolution. To show the extent of the good faith, Exhibit B as a copy of a February 1, 2023 "meet and confer" conference confirmation email. Also attached is a copy of the February 2, 2023 email relating to the mandatory call and a thirteen page copy of a Motion to Dismiss the Complaint in case 2:22-cv-0242 sent to "Ming's" attorneys. The email includes:

> "After discussion, I was positively impressed by Plaintiff's counsel's competency in these matters and its good faith in trying to handle these issues outside of Court as contemplated by the Judge's own rules. Defendant would consent to a stipulated delay as we resolve these matters and allow you to come back with your response. I also believe we may be able to resolve issues as to Claim Preclusion in such a stage if we both exchange case law as to this important issue. Let us know if you are onboard with a delay."

(See Exhibit B). Plaintiff was defendant and vice-versa in the initial filing. Plaintiff wanted to litigate, wanted to save the Court time, even made a financial offer. The draft motion lists both Fitness Anywhere LLC and JFXD TRX ACQ LLC as Plaintiff and there was nothing about *GoPets* or even statements made. Plaintiff tried hard to join, to litigate, and to avoid wasting the Court's time. The motion to dismiss is quite well drafted if one takes the time to read it and confirms that both cases are really related to different legal issues.

### b. Evidence of Fraud Surfaces

Plaintiff and the brand TRX® is victim of an insane level of fraud. Since this case began, Plaintiff has taken down tens of thousands of products online. Before settlement, payment and joining this case, Plaintiff investigated the identity. What Plaintiff found was chilling. There was no public identity, no prominent investor, no restaurant, no corporation only something a 14-year-old on a computer would do. Plaintiff found only instances of

fraud, police arrests, strange IDs of this character hunted by people for minor sums. (See Exhibit C) ("I still have his picture with me with some additional info;-). I also have his picture where he was previously detained by police as well." – stevanistelrooy (Exhibit C). "Oh and lots of people use the same account number to scam others. That's why it's always advisable to google up the account number and name of the person you are going to bank money into." – munkeyflo). Plaintiff found strongly-worded allegations of fraud, theft surrounding this identity. At Exhibit D for example, the discourse is even more savory:

Exhibit D

Not only was there only one "Loo Tze Ming" the address would match at 43, Jalan 21/31 Sea Part, PJ Selangor, Petaling Jaya (a small private house). The parties talk of jail, police, scams, fraud. "it's been almost half a year, should have let him stay longer in the lokap." As this Court can imagine, this chilled Plaintiff in joining the Arizona case. Plaintiff raised the issue with the attorneys of record. The reaction was, to put mildly, also chilling. Plaintiff was as the kids say today, ghosted. On July 7, 2023, counsels for this "Ming" identity

would finally file a strange "withdrawal of Counsel" offering the Court another strange elusive email at tc3997245@gmail.com. In the strange document riddled with mistakes, typos and gives no impression someone able to afford a $138,000 digital asset is the party. (Case 2:22-cv-02042, Dkt. # 15-1). The seriously pathetic document confirms the address at 43, Jalan 21/31. It is impossible not to find it laughable. (See Exhibit E). The document is not something someone buying $138,000 URLs in Malaysia drafts or files. It is worth a look.

    c.  **The Virginia Case Was Then Filed**

Unlike what counsel seems to suggest, Plaintiff is not into the business of pleading fraud with only the above unverified information. Maybe two Loo Tze Ming live of the same home. Holding strong doubts that the genuine owner of the URL was missing, Plaintiff asked for confirmation of (a) ownership and (b) identity from the counsels. All discussions ended, they refused service, and began to withdraw as the case was primed for default. Facing default deadlines and unable to substitute in while convinced by the counsel reaction there were massive issues, Plaintiff needed in rem jurisdiction unique to the ACPA. *Prudential Insurance Company of America v. Shenzhen Stone Network Information Ltd.*, 2023 WL 367217 (4th Cir. 2023) also relates to (a) a rare similar three-letter URL (<pru.com>) owned by a foreign defendant, (b) a GoDaddy® broker prelude, a (c) ICANN® action, an in rem service and a third party. The case was perfect and no one raised any issue on date. In fact, if Plaintiff is right and this "Ming identity" is false, in rem will be needed. Plaintiff spent 6+ months serving in rem in Virginia after trashing more than a month on the motion to dismiss a pleading.

    d.  **Plaintiff Still Believes The Real Owner Remains Unfound But Served In Rem In Virginia**

Plaintiff has credible belief this "Ming identity" is false, fraudulent. In the Virginia case, it began anew and wrote an email in English and Malay the current attorney has likely never seen since the real owner at the email of record is not this alleged "Ming identity." At ICANN®, the cyber-piracy forum, TRX® won two cases in 2021 and is now ready to file a

new one.[2] TRX even set the early precedent at ICANN®.[3] On August 29, 2022, Plaintiff used the GoDaddy® broker service, paid $69.99 to reach out to the true owner. One month later, the response back read:

> "… I wanted to inform you that we have been unable to establish contact with the current owner of this domain. Unfortunately, they have been completely unresponsive to our outreach for over 30 days. At this point, this owner has received well over a half dozen attempts at contact so it is very unlikely that they are willing to sell this domain and we will be closing this claim." (See Exhibit F).

On October 18, 2022, TRX filed a UDPR action.[4] Plaintiff was unaware its client had acquired Fitness Anywhere Inc. and not Fitness Anywhere LLC.[5] The Panelist at Forum®, found bad faith, cyber-piracy concluding:

> "Respondent has failed to participate in this proceeding, leaving the Panel to draw its own inferences regarding Respondent's conduct and intentions. In addition to the facts already recited above, the Panel notes that the domain registration information provided by Respondent is incomplete and possibly fictitious; for example, it includes "Iceland" as both the street address and the city, along with what is likely an invalid postal code."

The Virginia filing prominently disclosed the Arizona action. (23-cv-00217, Dkt. 1, ¶ 29).[6] It also explained how the predecessor in interest, Fitness Anywhere LLC, a party who had assigned all rights filed the UDPR action in its name and assigned all actions, claims or recovery. (23-cv-00217, Dkt. #1, ¶ 25). This is not about forum-shopping or lack of respect.

---

[2] This week www.trxstraps.us surfaced as the latest pirated site for the next attack.
[3] Forum Case FA 1320667, Fitness Anywhere, Inc. v. Mode Athletics (trxsuspensiontraining.com found confusingly similar to a combination of two brands of TRX).
[4] The IP assignment filed was signed by Jason Greenberg of Fried Frank et al., from New York without any knowledge of Mr. Villeneuve. JFXD TRX ACQ LLC (aka New TRX) acquired in full the legal entities Fitness Anywhere Inc. (Parent of Fitness Anywhere LLC), Fitness Anywhere International Inc., Fitness Anywhere UK Ltd., Fitness Cooeperatief S.A. (NL), TRXperience, LLC, and Fitness Anywhere Japan Ltd.
[5] Fitness Anywhere LLC v. Иван Иванов, Case No. 1924543 (2021).
[6] TRX refused to plead fraud unless it had confirmation of a strongly held belief in respect of pleading rules, good practices, and respect for Courts.

Plaintiff wasted more than six months serving in rem as it wants to respect the ACPA rules and give the real owner the chance to appear and defend. (Case 23-cv-00217, Dkt. #55, Memorandum in Opposition of Motion to Set Aside Entry of Default). Plaintiff was unable to get this and the Virginia courts to verify the identity and ownership. This is not a case where Plaintiff secretly hid, acted, and tried to circumvent *GoPets*. Plaintiff tried to appear in Arizona, discovered massive fraud, trashed months of work, was forced to Virginia and spent six months trying to get in rem jurisdiction over the real missing owner – who is still missing today but served in Virginia and not this Court.

IV. **Frankly Defendant Story Makes Simply No Sense – Start to Finish**

At most this URL is priced at $40,000 by experts. Here the facts would have this Court believe a person from Malaysia, who trades in digital assets purchased for resale the URL for $138,000. That digital asset trader defaulted a GoDaddy's broker service, also defaulted at ICANN, and for over one full year has been unable and unwilling to make any offer to the famous TRX brand, likely the party most likely to acquire it. At some point the first attorney suggested $300,000 as a possible bid. The first attorney proceeded to check and, to his surprise, had to withdraw the offer. This is one of rarest moments where a three letter URL likely fell back to the public domain. It likely was owned by a large corporation who did not use it and did not know how to leverage the value. URL in hand, registrars now try to use third parties to leverage value as their business models evolve.

V. **This Case Does Not Warrant Fees Under Any Standard**

Plaintiff's counsel is the attorney who helped the 7th Circuit establish the fee standard for Lanham Act cases. *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019) (vacating District Judge motion for fees for entry of new *Octane* standard). Unlike the 7th Circuit, the 9th Circuit has required that a plaintiff show that a defendant engaged in "malicious, fraudulent, deliberate or willful" infringement. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Nothing here even orbits this high standard even if the Court ignores Sections I-IV of this response. Plaintiff owns the brand TRX®, it is routinely cyber-pirated and is going against the identical URL <trx.com> after careful

13

GoDaddy® and ICANN® efforts to which this owner defaulted. The Arizona case was filed by a strange secret party. Plaintiff who has no connection with the venue tried in good faith to jump in, even held a meet and confer and wasted days preparing a motion to dismiss. Once Plaintiff owned compelling evidence the identity was likely fraud, Plaintiff notified the first set of lawyers who bailed. Plaintiff needing in rem jurisdiction over a three-letter URL filed in Virginia. The only reason given for fees is the "GoPets" strange precedent which honestly either does not apply, is bad law, can be reversed or the amended pleading is sufficient to state a claim upon which relief can be granted. In summary, Plaintiff:

(a) Wasted time and money with GoDaddy® - owner never bothered

(b) Wasted time and money at ICANN getting default - owner never bothered

(c) Wasted time drafting a motion to dismiss of the first case – lawyers bailed

(d) Found evidence of a fraudulent intent – no one believes it

(e) Had to waste 6 months doing in rem service including publication

(f) Secured default yet later reversed default.

(g) Was sent back to Arizona but found both cases not directed to same law.

(h) Faced GoPets when 4th Circuit law applies really.

(i) Was forced to litigate the Court itself from Santorini Greece.

(j) Was thrown out of Court on a perfect pleading without a hearing or a motion.

(k) Is falsely accused of forum shopping with nothing but circumstantial timing.

(l) Stands insulted and accused on ethical violations in this motion for fees.

But as Mr. Greenspan said, people cannot presume fraud, and Plaintiff sure did not when this case initially started. But at some point, strange became fiction and none of the story made any sense. The owner of record is at localxiy@gmail.com. This email address and the real owner has never answered or responded to any of the solicitations from GoDaddy®, ICANN®, or even Plaintiff.

RESPECTFULLY SUBMITTED this 15th day of April 2024.

By: */ s / Alain Villeneuve (pro hac)*

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify on the 15th day of April 2024 I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants of record in this matter:

Kenneth M. Motolenich-Salas (Bar No. 027499)
MotoSalas Law, PLLC
16210 North 63rd Street
Scottsdale, AZ 85254
 Tel:  202-257-3720
E-mail: ken@motosalaslaw.com

Michael B. Marion (Bar No. 035627)
**BYCER & MARION**
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
michael@bycelmarion.com
*Attorneys for Defendants trx.com and Loo Tze Ming*

By: */s/ Alain Villeneuve*

_____