

Alain Villeneuve <avilleneuve@trxtraining.com>

---

# Ming v. Fitness Anywhere: Service of Preliminary Order

---

**Alain Villeneuve** <avilleneuve@trxtraining.com>                                    Thu, Feb 2, 2023 at 1:27 PM
To: "John Berryhill, Ph.d., Esq." <john@johnberryhill.com>
Cc: Jeff Johnson <jjohnson@iplawusa.com>, Steven Adams <sadams@iplawusa.com>, Ariana Ring <aring@iplawusa.com>, "Munro, John E." <JEMunro@duanemorris.com>, cristin <Cristin@johnberryhill.com>

RULE 408

Group,

I have attached a copy of the first motion to dismiss as prepared in the draft version. You have promised not to take advantage of any of the information included herein to file a different motion. After discussion, I was positively impressed by Plaintiff's counsel's competency in these matters and its good faith in trying to handle these issues outside of Court as contemplated by the Judge's own rules. Defendant would consent to a stipulated delay as we resolve these matters and allow you to come back with your response. I also believe we may be able to resolve issues as to Claim Preclusion in such a stage if we both exchange case law as to this important issue. Let us know if you are onboard with a delay.

In regards to settlement negotiations, also in the spirit of good faith, we retained the broker services of GoDaddy. We asked them to price the value. On August 31, GoDaddy's expert pointed us to the following URL value estimator:

https://www.estibot.com/appraise?a=process&data=trx.com

The software valued the URL at $42,000 (See below). In that page, it provides comparables with sales prices.





For a value of $42,000 we offered $20,000 as an initial offer and we extend this offer to Mr. Ming even if we have yet to confirm ownership or paid value levels. A purchase of $138,000 in light of the above in our possession seems a bit off.

We kindly must reject your client's initial demand of $300,000.

Sincerely,

Alain

[Quoted text hidden]


**Motion to Dismiss TRX v Ming.pdf**
618K

Case 2:23-cv-02330-ROS Document 99-2 Filed 04/15/24 Page 3 of 17



Alain Villeneuve <avilleneuve@trxtraining.com>

# Ming v. Fitness Anywhere: Meet and Confer Wednesday Feb. 1 at 2:30-3:00 PM AZ time (1:30-2:00 PM PT and 4:30-5:00PM EST).

**Jeff Johnson** <jjohnson@iplawusa.com>  Tue, Jan 31, 2023 at 11:43 AM
To: Alain Villeneuve <avilleneuve@trxtraining.com>
Cc: "Munro, John E." <JEMunro@duanemorris.com>, "John Berryhill, Ph.d., Esq." <john@johnberryhill.com>

Gentlemen:

Below please find the dial-in information for tomorrow's call.

Wednesday Feb. 1 at 2:30-3:00 PM AZ time (1:30-2:00 PM PT and 4:30-5:00PM EST).

Thanks and best regards,

Jeff

Join my meeting on Vonage Meetings

Link: https://meetings.vonage.com/657126974

Meeting ID: 657126974

United States

Dial-In: (732) 200-1872

Click to dial: (732) 200-1872,,657126974#

**Jeffrey W. Johnson,** *Partner*



4/10/24, 3:39 PM RSVP Mail - Wing V - Business Anywhere Meet and Confer Wednesday, Feb 14 at 3:00 PM AZ time (12:00-2:00 PM PT and 4:30-5:00PM EST).

Case 2:23-cv-02330-ROS   Document 99-2   Filed 04/15/24   Page 4 of 17

18 E. University Drive •Suite 101 • Mesa, AZ 85201
O: (480) 655-0073 • F: (480) 655-9536 E: **jjohnson@iplawusa.com**

**www.iplawusa.com** • **Profile**

This message contains information intended only for the use of the addressee(s) named above and may contain information that is legally privileged. This e-mail is covered by the Electronics Communications Privacy Act, 18 U.S.C. §§ 2510-2521. If you are not the addressee, or the person responsible for delivering it to the addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message immediately thereafter. Thank you. ATTORNEY-CLIENT, COMMUNITY OF INTEREST PRIVILEGE AND/OR WORK PRODUCT PRIVILEGED COMMUNICATION Depending upon the recipient, this communication may be protected by the attorney-client, community of interest privilege and/or the work product privilege and should be treated in a confidential manner. Any disclosure to other than key management personnel on a need-to-know basis may jeopardize the privilege and require disclosure to adverse parties in litigation

**DUANE MORRIS LLP**
John Munro (to be admitted *pro hac vice*)
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Telephone: (312) 499-6739
Facsimile: (312) 499-6701
Email: jemunro@duanemorris.com

**JFXD TRX ACQ LLC DBA TRX**
Alain Villeneuve (to be admitted pro hac vice)
1420 Fifth Avenue, Suite 2200
Seattle 98101
Telephone: (312) 404-1569
Email: avilleneuve@trxtraining.com

Attorneys for Defendant JFXD TRX ACQ LLC
& Fitness Anywhere LLC (Chapter 11 acq).

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| FITNESS ANYWHERE LLC, JFXD TRX ACQ LLC, a Florida limited liability<br><br>Defendant,<br><br>v.<br><br>Loop Tze Ming, an individual from Malaysia.<br><br>Plaintiff. | Case No. 2:22-cv-02042<br><br>**MOTION TO DISMISS CLAIMS I, II, AND III ON MULTIPLE GROUNDS**<br><br>Judge:<br><br>Trial Date:<br>Complaint Filed: Nov. 11, 2022<br>Complaint Served: Dec. 5, 2022<br><br>**DEMAND FOR JURY TRIAL** |

I.  **Congress Asks This Court to Fight Cyber-piracy**

House Member Coble, from the Committee on the Judiciary, submitted a report which ultimately would amend the U.S. Trademark Act to pass into law the "Trademark Cyberpiracy Prevention Act" on October 25, 1999. Portions read: [1]

---

[1] Full report at:

1

Through this committee's oversight, it has become very aware of the problems faced by owners of famous marks when dealing with the issue of domain names. Much testimony has been gathered evidencing the practice of cybersquatters who register numerous domain names containing American trademarks or tradenames only to hold them ransom in exchange for money. … The time has come for this practice to stop. The legal recourse provided for in this legislation, combined with the intellectual property alternative dispute resolution procedures being adopted by the domain name registrars, will give trademark owners important tools to protect their intellectual property. This is a measured and balanced response to a growing problem, and will clarify that trademark property rights are respected as the Internet continues to grow. *Report to H.R. 3028 – Purpose and Summary*.

Since domain names are available from Network Solutions, Inc. (NSI), and now other registrars, on a first-come, first-served basis, some owners have discovered that the domain name containing their trademark has already been registered. The situation has been aggravated by some people, known as ``cyberpirates,'' registering domain names in the hope that they might be able to sell them to companies that place a high value on these trademarks. These cyberpirates have no intention of using the domain name in commerce, and instead often attempt to exact money from a company in exchange for domain names that relate to that company's trademarks. *Report to H.R. 3028 – Background and Need for Legislation*.

The issue today relates to the famous U.S. brand TRX® who prevailed at the administrative process offered by ICANN® / FORUM®. After paying a fee, authoring a brief, it secured a decision that the domain "trx.com" is substantially similar to the brand TRX®, the current owner had no good faith basis and ordered the transfer. (See Forum Decision FA2210002016615 as Exhibit A). Part of the bad faith decision from Panelist David E. Sorkin includes: "… the Panel notes that the domain registration information provided by Respondent is incomplete and possibly fictitious; for example, it includes "Iceland" as both the street address and the city, along with what is likely an invalid postal

---

https://www.govinfo.gov/content/pkg/CRPT-106hrpt412/html/CRPT-106hrpt412.htm

code." (Exhibit A – Registration and Use in Bad Faith).

To salvage some of its invested $138,000, the Cyber-pirate filed the current action. Defendant calls Plaintiff a cyber-pirate with assurance and conviction based in part on the slew of admissions found in the Complaint. The Cyber-pirate admits <trx.com> was acquired on April 2022 for $138,000 (Complaint, Dkt. #1, ¶16) by a 37-year-old restaurant industry operator from Malaysia. (Complaint, Dkt. #1, ¶¶ 2,9). It admitted, "[r]ecently, the Plaintiff became interested in investments in digital assets, and was advised that the internet domain name TRX.com was available for sale." (Complaint, Dkt. #1, ¶ 10) (emphasis added). This Plaintiff calls the URL an "investment in digital asset." The Cyber-pirate further admits the website was then put up for sale: "Plaintiff arranged to have the Domain Name resolve to a "for sale" page through which prospective purchasers could express interest in obtaining the Domain Name." (Complaint, Dkt. #1, ¶ 19). "Plaintiff has never used the Domain Name to advertise exercise products or services…" (Complaint, Dkt. #1, ¶ 21).

## II.   Plaintiff Did Not Take Part In The UDPR Proceeding

This Plaintiff, if taken at his word, still bears the burden of establishing a prima facie case of personal jurisdiction. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Mr. Ming points to the UDPR decision from FORUM® at Exhibit A as support Defendant is tied to this Court and why it can challenge that decision and its finding of bad faith. Specific jurisdiction exists when a defendant "purposefully directed its activities at the forum state," and the plaintiff's alleged injuries "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Defendant took part in the UDRP between itself and a Respondent name Mr. Au Tuu from Iceland. Defendant has no other ties to the jurisdiction.

The website <Domain.com> warns website owners: "Why you can't register a domain name with a fake name or an alias." (See article as Exhibit B). In the Complaint, the Plaintiff is unambiguous:

3

1  "Plaintiff used an alias as the registrant name in the belief it would protect his personal privacy, as the
2  owner of a valuable asset." (Complaint, Dkt. #1, ¶ 20). It used a strange name "AU TUU" living on
3  the street of Iceland, the city of Iceland. Such deception was part of the reason why bad faith was
4  found. As Congress explained, rules help this Defendant:

       a.       The ICANN Policy is Mandatory To A Registrant

The Internet Corporation for Assigned Names and Numbers (ICANN) was founded in 1998 and grew out of a U.S. Government commitment to transfer the policy and technical management of websites over the Internet to a non-profit corporation based in the U.S. with global participation. ICANN manages the numerical address of a website called the DNS (Domain Name Systems), the generic Top Level Domains (gTLD) such as .com, .gov, .ca for Canada, to name a few. Critical to this case is how ICANN manages what is called the Uniform Resource Locator (URL) also known as the domain name that represents a unique address on the Internet (See below).



The current dispute stems from a fight over a URL <trx.com> managed by ICANN and hosted

in the United States by GoDaddy.com, LLC ("Registrant"). On October 24, 1999, ICANN approved the Uniform Domain Name Dispute Resolution Policy (the "Policy").[2] These rules are incorporated into a URL owner's registration agreement. (Policy Rule 1 – See copy of Policy at <u>Exhibit C</u>). Rule 4, from this Agency requires the disputes to be handled at ICANN, as a mandatory requirement of owning a website:

> *Policy Rule 4. Mandatory Administrative Proceeding.*
>
> *This Paragraph sets forth the type of disputes for which you are required to submit to a mandatory administrative proceeding. These proceedings will be conducted before one of the administrative-dispute-resolution service providers listed at www.icann.org/en/dndr/udrp/approved-providers.htm (each, a "Provider").*
>
> *a. Applicable Disputes. You are required to submit to a mandatory administrative proceeding in the event that a third party (a "complainant") asserts to the applicable Provider, in compliance with the Rules of Procedure, that (i) your domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and (ii) you have no rights or legitimate interests in respect of the domain name; and (iii) your domain name has been registered and is being used in bad faith.*

The process at ICANN is mandatory to an owner, it is critical that owners provide their information in case of challenges to ownership as was the case here.

b.  WHOIS Data Reminder Policy (WDRP)

ICANN has set up a WHOIS Data Reminder Policy (WDRP) which "reminds the registrant that provision of false Whois information can be grounds for cancellation of the domain name registration. Registrants must review their Whois data, and make any corrections." (See WDRP at <u>Exhibit D</u>). A copy of the "Whois" from the ICANN database is attached as <u>Exhibit E</u> for the website www.trx.com.

---

[2] The temporal proximity between the Cyber-piracy inclusion in the U.S. Lanham Act and the ICANN Policy set up is not coincidental.

5

TRX'S FIRST MOTION TO DISMISS                                   CASE NO. 2:22-cv-02042

In violation of the ICANN, WDRP and WHOIS, arguably Mr. Ming offered fraudulent registrant contact, administrative contact and technical contacts information where he did not even bother giving a false street or city contact:

| Registrant Contact | |
|---|---|
| Name: | au tuu |
| Street: | Iceland |
| City: | Iceland |
| Postal Code: | 120 |
| Country: | IS |
| Phone: | +354.1564189 |
| Email: | localxiy@gmail.com |

The owner of the URL is Au Tuu, not Mr. Ming. Admitting to this fraud in the Complaint, "Plaintiff used an alias as the Registrant name in the belief it would protect his personal privacy, as the owner of a valuable asset." (Dkt. #1, paragraph 20). The Panelist Sorkin was unamused.

       c.  ICANN Rules of Procedures

In case of disputes under the Policy, Rule 1 provides a set of "Rules of Procedures" regulate the mandatory process including notice to a Registrant from the identity in the WHOIS database. (See Exhibit F for a copy of the Rules of Procedures). The Rules of Procedures set a process with a "Party" (1. Definition – Exhibit C). The following definition are offered: **Party** means a Complainant or a Respondent / A **Respondent** means the holder of a domain-name registration against which a complaint is initiated / **Complainant** means the party initiating a complaint concerning a domain-name registration.

ICANN sent a notice of process to Mr. AU TUU from Iceland, the Registrant and the Respondent. The Cyber-pirate does not even plead ignorance, only a fumble resulting from its

6

fraudulent data entered at the WHOIS. In the Complaint, Mr. Ming explains: "Upon commencement of the UDPR proceeding, an email notice was sent to the administrative contact email address of Plaintiff's domain name. Because Plaintiff's domain administrator was not expecting to receive email to that address and the email was in English, the email notice was overlooked by the Plaintiff's domain administrator. Accordingly, Plaintiff defaulted in the UDPR proceeding." (Complaint, Dkt. #1, ¶ 32). So it gave false information, still received notice, failed to participate in the mandatory and now dumps this situation on this Court's front door.

**III.     Dismissal of Counts I, II, and III For Lack of Standing**

In Counts I, II, and III a person named Mr. Ming tries illegally steps into the shoes of Mr. Au Tuu of Iceland playing Registrant and Respondent. Mr. Au Tuu is the genuine owner, Registrant and Respondent in the UDPR proceeding copied at Exhibit F. This is evidenced by WHOIS information and required by the rules. The process at Forum as Respondent is mandatory and Mr. Ming never participated in it. Claim I wants the UDPR decision must be annulled for fraud in the proceeding. Claim II challenges the UDPR decision as a whole and asks the Court for invalidation of the transfer. Count III takes issue with the UDPR's bad faith determination conducted under a different standard under the Policy. The Prayer for Relief also asks for such. There is no standing to challenge the UDPR procedure, much less ask the Court to reverse or revisit. Mr. Au Tuu of Iceland, was served, defaulted. Spoken simply, Mr. Ming lied to WHOIS, did not participate in the mandatory proceeding and has no standing to challenge that action. This Court must remind owners of websites to take the WHOIS seriously.

**IV.     Claim I Cannot Stand As Section 1114(2)(D)(IV) Has No Requirement of Ownership**

In addition, Claim I is titled "Fraud in Domain Dispute Proceedings – 15 USC 1114(2)(D)(IV)" (Complaint, Dkt. #1, ¶¶ 35-41). Pointing to Section 1114(2)(D)(IV), Plaintiff argues ownership of the

7

TRX'S FIRST MOTION TO DISMISS                                                            CASE NO. 2:22-cv-02042

brand TRX® was not on one party but a different party and as such, the statement qualified as fraud.³ The law does not support this strange position. The quoted portion of the Lanham Act reads:

> *(2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows: (D)(iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation <u>by any other person</u> that a domain name is identical to, confusingly similar to, or dilutive <u>of a mark</u>, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.*

Any person can make a representation that "a domain name is identical to, confusingly similar to, or dilutive of a mark." As long as the mark (e.g. TRX®) exists, is registered and is represented to be identical or similar to TRX.COM, there can be no misrepresentation and much less fraud. Section 15 USC 1114(2)(D)(iv) cannot support any claim of fraud based on misrepresentation of personal ownership by the party and must be dismissed.

### V.  Claim I Cannot Stand As Section 1114(2)(D)(ii)(II) Excludes Transfers

Furthermore, Claim I relies upon a false section of the Cyber-piracy act. As part of the Lanham

---

³ JFXD Capital, LLC and JFXD TRX ACQ LLC acquired all rights and interests as to Fitness Anywhere LLC on August 26, 2022, assets, equipment, including all brands, Forum proceedings, claims or rights as part of U.S. Bankruptcy Court for the Central District of California No. 8:22-bk-10948-SC and 8:22-bk-10949SC (Chapter 11). Assignment information has yet to be registered in foreign jurisdictions.

Act, 15 USC 1114(2) begins with "Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title <u>shall be limited as follows</u>:" Section 1114(2)(D)(iv), is a narrowing limitation that includes; "If a registrar, registry, or other registration authority takes an action described under clause (ii).." Looking at clause (ii) we note the limitation underlined below:

> *15 USC 1114(D)(ii) An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—(I)in compliance with a court order under section 1125(d) of this title; or (II) in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting <u>the registration of a domain name</u> that is identical to, confusingly similar to, or dilutive of another's mark.*

In the above, the transfer of a domain name can be linked with a Court order under Section 1125(d) but policy implemented by a registrar is expressly limited to "the registration" of the domain name, not a transfer. Plaintiff was not blocked from the registration of a domain name. As a matter of law, the Claim I must be dismissed.

**VI.    <u>Claim II Cannot Stand As Section 1114(2)(D)(ii)(II) Also Applies to Section (v)</u>**

Claim II is premised on Section 1114(2)(D)(v) instead of Section 1114(2)(D)(v) and has the same narrowing limitation that includes:

> A domain name registrant whose domain name has been suspended, disabled, or transferred <u>under a policy described under clause (ii)(II)</u> may, upon notice to the mark owner, file a civil action to establish that the registration or use

9

TRX'S FIRST MOTION TO DISMISS                                                                          CASE NO. 2:22-cv-02042

of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

156 USC 1114(2)(D)(v):

Once again, turning to clause (ii)(II) we note the limitation underlined below:

> *15 USC 1114(D)(ii) An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—(I)in compliance with a court order under section 1125(d) of this title; or (II) in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting <u>the registration of a domain name</u> that is identical to, confusingly similar to, or dilutive of another's mark.*

Section (ii)(II) specifically called upon is limited to the registration of a domain and not the transfer of a domain. The transfer of a domain name is linked with a Court order under Section 1125(d) but the complaint as to policy implemented by a registrar is expressly limited to "the registration" of the domain name. Here, Plaintiff was not blocked from securing a domain. As a matter of law, the Claim 1 must be dismissed.

### VII. <u>Claim III Cannot Stand As There Was No Registration</u>

Plaintiff asks this Court to find that "In <u>registering</u> the Domain Name, Plaintiff did not have "bad faith intent," as provided in 15 USC 1125(d)(1)(A)(i), to profit from Defendant's alleged trademarks. At the time Plaintiff <u>registered</u> the Domain Named and at all times subsequent, the Plaintiff has intended to use the Domain Name for legitimate purposes, and has invested substantial

resources for the Domain Name." (Complaint, Dkt. #1, ¶ 49) (emphasis added). The pleading explains how "The Domain Name was available for purchase through a publicly accessible internet brokerage at www.4.cn. Prior to Plaintiff's purchase of the Domain Name at substantial cost, any other person, including Defendant could have purchased the Domain Name on the same terms." (Complaint, Dkt. #1, ¶ 18). No facts are given where Plaintiff registered the domain name, this was an acquisition. The same way registration of trademark differs from assignment of a mark, here registration differs from a transfer or an acquisition. Claim II must also be dismissed for this reason.

**VIII.  <u>Claim III Cannot Stand As Plaintiff Confuses Registration and Profit</u>**

As stated above, while Plaintiff at most purchased the Domain Name, Plaintiff at Claim III asks the Court to review the bad faith determination linked with a "registration" of the Domain Name it would have purchased. 15 U.S.C. 1125(d)(1)(A)(i) reads:

*"(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person— (i) has a bad faith intent <u>to profit from that mark</u>, including a personal name which is protected as a mark under this section;*

The pleading misleads the Court thinking profit is linked with registration. That is not the law and Claim III must be dismissed as plead. Ironically, the self-defeating pleading of this Complaint is the poster-child of what a Cyber-pirate should avoid admitting. If the pleading is to be believed, someone named "Loo Tze Ming" without offering any evidence of true ownership of the URL <trx.com> presents himself as a "citizen of Malaysia, residing in Selangor, Malaysia." (Dkt. #1, paragraph 2). He says to be a "37-year-old investor, with interests in the restaurant industry." (Dkt. #1, paragraph 9). He writes "Recently, the Plaintiff became interested in <u>investment in digital assets</u>

11

and was advised that the internet domain name TRX.com was available for sale." (Dkt. #1, paragraph 10). Let this simmer in, Claim III is a demand he did not "profit" from the domain and he admits investing in the domain name. One guess unless the website is sold, there is no profit? Mr. Ming even writes "after learning that non-distinctive short domain names have substantial value, Plaintiff was informed the Domain Name was available for purchase, and the Plaintiff purchased the Domain Named TRX.com in April 2022, for more than $138,000…." (Dkt. #1, paragraph 16). A private citizen from Malaysia, a country where the population speaks Malay, and the average salary is around $19,000 USD/year paid $138,000 for a URL as an admitted speculative investment. Plaintiff further admits "Plaintiff arranged to have the Domain Name resolve to a "for sale" page through which prospective purchasers could express interest in obtaining the Domain Name." (Dkt. #1, paragraph 19). This is the definition of a cyber-pirate. Someone who acquires a known trademark domain name for the purpose of a financial investment. The Lanham Act defined cyberpiracy as:

> *A person shall be liable in a civil action by the owner of a mark... which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person— (i) has a bad faith intent to profit from that mark ...which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark. 15 USC 1125(d)(1)(A) Cyberpiracy prevention.*

TRX is a famous mark even in Malaysia and is sold and used there[4]. This Cyber-pirate today

---

[4] TRX actually owns Malaysian trademarks No. 2011000344, 2011000345, and 2011000346.

is simply using this Court to avoid losing something it illegally purchased for profit months ago. This pirate was caught and today, it wants to misuse the judicial system to avoid losing the investment.

**IX.   CONCLUSION**

Congress back in 1999 created ICANN which allowed these disputes to be handled elegantly and by experts. The same year, the U.S. Trademark Act was reinforced with anti-cyberpiracy rules designed to help famous brand owners like TRX. TRX paid over $1,000 in fee, briefed the ICANN procedure and secured a decision in its favor. Au Tuu from Iceland was the Registrant and Mr. Ming can only be upset his deception backfired. It never bothered to correct the situation, to update the WHOIS or even read the emails it received. Amusingly enough, in the pleading it admits having no rights in "TRX" and having done no use of the website. It purchased it for investment purposes which violates the law in the United States and even at ICANN. Today, before TRX can counterclaim for cyber-piracy against this individual, the Court can easily dismiss the case based on (a) the fact Mr. Ming was not a party in the UDPR proceeding and there is no jurisdiction between Mr. Ming and Defendant in this Court, (b) Mr. Ming was not a party in the UDPR and only the parties can challenge that decision, (c) the portions of statutes as cited are not designed for the purpose of a cyber-pirate trying to recapture a URL it lost after incompetence and a default.

Dated:  January 29, 2023

JFXD TRX ACQ LLC

By: */s / Alain Villeneuve*
    Alain Villeneuve

Attorney for TRX®