**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JFXD TRX ACQ LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>trx.com, et al.,<br><br>　　　　　Defendants. | No. CV-23-02330-PHX-ROS<br><br>**ORDER** |

Hoping to obtain ownership of the domain name <trx.com>, Plaintiff JFXD TRX ACQ LLC filed this case in the Eastern District of Virginia. That court concluded it lacked personal jurisdiction over Defendant Loo Tze Ming and transferred the case to Arizona. Once in Arizona, the Court gave Plaintiff multiple opportunities to plead a viable claim. Plaintiff was unable to do so, and the Court dismissed Plaintiff's complaint with prejudice. Ming now seeks an award of attorneys' fees and non-taxable expenses. Ming is entitled to such an award.

**I.	Standard for Awarding Fees and Costs**

JFXD sued Ming under 15 U.S.C. § 1125(d) hoping to obtain ownership of <trx.com>. The type of claim JFXD brought meant the court could "award reasonable attorney fees to the prevailing party" after concluding the case was "exceptional." 15 U.S.C. § 1117(a). Determining whether a case qualifies as "exceptional" requires looking "to the totality of the circumstances" and assessing whether the case "stands out from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016).  In making this assessment a court should consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*

Understanding why the present case qualifies as "exceptional" requires looking to events that occurred long before this suit was filed as well as the proceedings in a separate case.  Those background facts, combined with the weakness of JFXD's arguments and positions asserted in this case, render this case exceptional.

**II.     Events Before Present Suit**

The domain name <trx.com> was first registered in 1999 by an unknown third party. Approximately four years after that registration, nonparty Randal Hetrick invented "the famous gym product called TRX."  (Doc. 68 at 3).  Mr. Hetrick began selling that gym product through a company known as Fitness Anywhere LLC.  Over the following years, Fitness Anywhere obtained and used numerous trademarks involving the letters "TRX." (Doc. 68 at 3).  In 2018, attorney Alain Villeneuve began providing "IP legal services" to Fitness Anywhere.  (Doc. 95-7 at 5).  In June 2022, Fitness Anywhere filed for Chapter 11 reorganization.  (CV-22-2042, Doc. 11-1).

On June 16, 2022, Fitness Anywhere and a related company filed an application with the bankruptcy court for permission to employ Mr. Villeneuve as special intellectual property counsel while the bankruptcy proceeded.  (Doc. 95-7).  According to that application, Mr. Villeneuve would provide Fitness Anywhere with "general IP advice, patent and trademark prosecution, brand enforcement, IP litigation, management of foreign IP counsel, and maintenance of IP assets."  (Doc. 95-7 at 5).  Mr. Villeneuve submitted a declaration in support of that application where he explained his appointment was appropriate because of his "deep understanding and familiarity with [Fitness Anywhere], [its] IP and the issues that arise concerning [Fitness Anywhere's] IP."  (Doc. 95-7 at 11).

The application was granted, and Mr. Villeneuve provided legal services to Fitness Anywhere beginning on June 8, 2022. The record does not disclose when Mr. Villeneuve stopped providing services, but it is undisputed Mr. Villeneuve was still providing services as of late August 2022. (Doc. 95-8 at 4 n.1).

On August 26, 2022, JFXD purchased all of Fitness Anywhere's assets, including its intellectual property such as trademarks. (Doc. 23-2330 Doc. 74-3). Mr. Villeneuve's name does not appear on the asset purchase agreement, but it is difficult to believe Fitness Anywhere's "special intellectual property counsel" would have been unaware that his client had agreed to sell all its intellectual property. Despite Fitness Anywhere no longer owning any intellectual property, Mr. Villeneuve continued to work for Fitness Anywhere in some capacity.

In the fall of 2022, Fitness Anywhere asked Mr. Villeneuve to file a domain name dispute regarding ownership of <trx.com>.[1] (Doc. 68-2). Mr. Villeneuve prepared the necessary paperwork and on October 19, 2022, filed the dispute with a nongovernmental entity. In that dispute Mr. Villeneuve stated, "Fitness Anywhere LLC is the owner of the famous trademark TRX." (Doc. 68-2 at 4). That was false. As of October 2022, JFXD, not Fitness Anywhere, owned "the famous trademark TRX."

As of 2022, Defendant Ming had owned <trx.com> for approximately four years. Ming had purchased the domain name from a nonparty for $138,000. Despite owning <trx.com>, Ming claims he did not receive notice of the domain name dispute proceeding initiated by Mr. Villeneuve. Thus, Ming did not respond in that proceeding. In November 2022, a decision was issued by the nongovernmental entity concluding <trx.com> should be transferred to Fitness Anywhere unless Ming filed suit in Arizona. (CV-22-2042 Doc. 1). Ming received notice of that decision and on November 30, 2022, filed suit in Arizona.

Ming's complaint sought a determination he was entitled to remain the owner of <trx.com>. That case was assigned to Judge Logan. After filing his complaint, Ming

---

[1] Mr. Villeneuve has not identified who at Fitness Anywhere asked him to file that dispute and, again, it is difficult to believe Fitness Anywhere would have made such a request given that Fitness Anywhere did not own the intellectual property.

- 3 -

obtained a waiver of service from Fitness Anywhere, signed by Mr. Villeneuve. (CV-22-2042 Doc. 8). Despite waiving service, Fitness Anywhere did not respond to the complaint. Instead, on February 3, 2023, Mr. Villeneuve emailed Judge Logan's chambers stating Fitness Anywhere had declared bankruptcy in June 2022. Mr. Villeneuve's email also stated he was "the general counsel of JFXD . . . the purchaser of the Chapter 11 assets" and he was unable to determine "the optimal way" to file notice of Fitness Anywhere's bankruptcy. (CV-22-2042 Doc. 11-1). Given that Mr. Villeneuve was general counsel for JFXD, it is not clear why he waived service on behalf of Fitness Anywhere. Nor is it clear why Mr. Villeneuve believed he was responsible for filing notice regarding Fitness Anywhere's bankruptcy. At any rate, Judge Logan stayed the case against Fitness Anywhere pending resolution of the bankruptcy.

### III.  Activities in Present Suit

Shortly after Mr. Villeneuve emailed Judge Logan's chambers, JFXD filed the present suit in the Eastern District of Virginia. Mr. Villeneuve was involved as counsel for JFXD from the beginning. (Doc. 6-1). JFXD's complaint asserted a cybersquatting claim against <trx.com> and Ming. According to JFXD, <trx.com> is "identical to or confusingly similar to or dilutive of the TRX marks." (Doc. 1 at 12). As for Ming, he was identified as "the registrant of <trx.com>" and allegedly had a "bad faith intent to profit from" misusing <trx.com>. (Doc. 1 at 2, 12). JFXD's complaint sought transfer of <trx.com> to JFXD as well as an award of statutory damages. When the Virginia court asked JFXD why it believed the Virginia court had personal jurisdiction over Ming, JFXD responded by arguing Ming was not a proper party because Ming did not own <trx.com>. Of course, it had been JFXD's own decision to identify Ming as the owner of <trx.com> and to name him as a defendant. JFXD did not offer any explanation to the Virginia court why it had sued Ming if JFXD believed Ming was not the owner of <trx.com>.

Ming appeared in Virginia to contest personal jurisdiction. Ming conceded he was subject to personal jurisdiction in Arizona, and he requested the case be transferred to Arizona. (Doc. 42 at 8). JFXD opposed transfer by arguing, again despite its own

allegations that Ming was the owner of <trx.com>, that there was no "evidence of ownership of the domain by [Ming]." (Doc. 39 at 6).

The Eastern District of Virginia did not address JFXD's shifting positions regarding Ming. Instead, that court concluded personal jurisdiction over Ming was lacking and transferred the case to Arizona. (Doc. 59). After the case arrived in Arizona, Mr. Villeneuve, as counsel for JFXD, filed a motion for preliminary injunction. (Doc. 68). The motion sought an order requiring the immediate transfer of <trx.com> to JFXD. That motion did not discuss or cite *GoPets Ltd. v. Hise*, the Ninth Circuit authority most pertinent to JFXD's cybersquatting claim. 657 F.3d 1024, 1032 (9th Cir. 2011). Ming filed an opposition, discussing the applicability of *GoPets* and why, under that precedent, JFXD's cybersquatting claim was doomed. According to Ming, <trx.com> was first registered years before the TRX gym product was invented and, therefore, *GoPets* established JFXD's cybersquatting claim had no chance of success. JFXD's reply acknowledged *GoPets* but argued, for indecipherable reasons, the Court should not follow *GoPets*. It was unreasonable for JFXD to file a reply that did not contain any plausible argument that *GoPets* did not bar the cybersquatting claim.

The Court denied the request for preliminary injunction by pointing out it was undisputed "<trx.com> was initially registered in 1999 and the TRX-related marks did not exist until years later." (Doc. 82 at 4). Based on that sequence of events and the rule set forth in *GoPets*, the Court concluded JFXD had "no likelihood of success." (Doc. 82 at 3). Instead of requiring Ming file a motion to dismiss making the same arguments he had made in opposing the motion for preliminary injunction, the Court ordered JFXD to file a document explaining how *GoPets* did not require dismissal of the complaint. JFXD was also ordered to explain Mr. Villeneuve's contradictory statements regarding ownership of the TRX-related marks. (Doc. 82 at 5). That is, the Court instructed Mr. Villeneuve to explain why he had stated Fitness Anywhere owned the TRX-related marks in filing the domain name dispute despite Fitness Anywhere having sold those marks months earlier.

JFXD's response addressing the viability of its claim in light of *GoPets* was

exceptionally difficult to understand. It appeared JFXD misunderstood basic aspects of litigating a cybersquatting claim. For example, JFXD titled one section of its response "Further Evidence a Registrar Owns this URL." (Doc. 83 at 8). A "registrar" is a company that registers "domain names with registries on behalf of those who own the names." *Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010). It was undisputed <trx.com> was not currently owned by a "registrar." Thus, JFXD's statement that <trx.com> was owned by a "registrar" was inexplicable.

JFXD's response also recounted a sequence of events it described as "worthy of a fiction book." (Doc. 83 at 8). JFXD allegedly attempted to buy <trx.com> through GoDaddy, a nonparty brokerage that connects buyers with sellers of domain names. JFXD claims it was contacted by a GoDaddy agent and "[t]here was the smell of money in the air, the same vibe as entering a used car showroom." The agent "was forceful . . . and tried to bully [JFXD] in giving an initial seven number initial offer" to purchase <trx.com>." (Doc. 83 at 8). JFXD refused to do so. These events had no relevance to the current dispute. GoDaddy is not a party nor is there any connection between GoDaddy and Ming. The fact that JFXD believed it had been mistreated by GoDaddy was irrelevant to the claim JFXD was pursuing in this case.

On the merits, and as best as the Court could determine, JFXD's response was attempting to argue *GoPets* did not preclude its cybersquatting claim because <trx.com> had been "re-registered" after the TRX-related marks came into existence. While unsure whether that was the position JFXD wished to pursue, the Court granted JFXD leave to amend its complaint to allege facts supporting that argument. (Doc. 85).

For unknown reasons, JFXD and Mr. Villeneuve ignored the Court's Order requiring an explanation of Mr. Villeneuve's contradictory statements regarding ownership of the TRX-related marks. Identifying the proper owner of the TRX-related marks was crucial for this case to continue. If Mr. Villeneuve's statement in October 2022 that Fitness Anywhere still owned the TRX-related mark was accurate, JFXD would not have standing to bring the current case. The decision to ignore the Court's Order requiring an explanation

addressing ownership was unreasonable.

JFXD filed an amended complaint but, as the Court later observed, those "allegations appear[ed] to be based on a misunderstanding of how the domain name system operates." (Doc. 88 at 2). JFXD's amended complaint alleged the registration of <trx.com> had lapsed and Ming had purchased the domain name from "the public domain." It was not clear what JFXD meant by "public domain." More importantly, JFXD's position had always been that Ming purchased <trx.com> for $138,000 through an "internet brokerage." (Doc. 74 at 3). JFXD appeared to believe registration with a registrar was the same as purchasing a domain name through an "internet brokerage." Those are very different events. Because JFXD had not alleged any facts establishing the registration of <trx.com> had lapsed and Ming had "re-registered" it, the complaint was dismissed without leave to amend.

At the same time JFXD filed its amended complaint, Mr. Villeneuve submitted a statement addressing his contradictory statements. That statement was submitted *ex parte* via email to the Court. (Doc. 87). The Court noted it was improper to submit such *ex parte* statements and instructed Mr. Villeneuve not to send future communications via email. As for the contents, the email was "largely indecipherable." (Doc. 88 at 4). The Court could not determine why Mr. Villeneuve had made conflicting statements and submitting an indecipherable statement attempting to explain his behavior was unreasonable.

A few weeks after judgment was entered against JFXD, Ming filed a motion for attorneys' fees. The governing statute allows for awards of attorney's fees to prevailing parties in "exceptional cases." 15 U.S.C. § 1117(a). Ming argues that requirement is met here because JFXD "had no chance of success" and engaged in inappropriate behavior throughout this case, such as presenting baseless legal arguments and attempting *ex parte* communications with the Court. Ming seeks an award of $39,746.50 in attorneys' fees and $1,352.27 in non-taxable expenses. JFXD filed an opposition but, as with many of its previous filings, that document is very hard to understand. JFXD's opposition does not contain any objections to the hourly rates of Ming's counsel or the number of hours that

counsel spent on this case.

JFXD's improper behavior continued in opposing the request for attorneys' fees. The following is a partial list of JFXD's misstatements or unreasonable arguments made in that opposition:

- JFXD argues a plaintiff is entitled to fees only upon showing the defendant "engaged in malicious, fraudulent, deliberate or willful infringement." (Doc. 99 at 2). That test was overruled in *SunEarth, Inc. v. Sun Earth Solar Power, Co.*, 839 F.3d 1179 (9th Cir. 2016). JFXD cites *SunEarth* but fails to apply its holding.

- JFXD argues Ming "cites a bizarre lower standard" regarding entitlement to fees. (Doc. 99 at 3). However, JFXD is the party that cites the incorrect standard.

- JFXD repeatedly argues the Court should have applied "2nd Circuit law" because the case was transferred from Virginia. (Doc. 99 at 3, 4). Virginia is in the Fourth Circuit, not the Second Circuit.

- JFXD argues the Court should not have applied Ninth Circuit law. JFXD did not make this argument while the case was pending.

- JFXD argues "extreme poor lawyering in *GoPets* misled the 9th Circuit to ignore the relevant portion of the ACPA." (Doc. 99 at 3). JFXD appears to believe "poor lawyering" is a basis to ignore binding precedent. It is not.

- JFXD argues it will request *GoPets* be overruled and that argument "is not frivolous litigation but a public service." (Doc. 99 at 5). Before judgment, JFXD never argued *GoPets* was incorrect. Rather, JFXD consistently maintained, without explanation, that *GoPets* did not apply in this case because of factual differences.

- JFXD argues *GoPets* should not apply because "[t]he 9th Circuit's own jury instructions no [sic] not include *GoPets*." (Doc. 99 at 6). The contention that model jury instructions should control over a published opinion is

frivolous.

- JFXD argues the Court required he file an amended complaint by February 21, 2024, despite the fact that Mr. Villeneuve was "leaving on February 14, 2024 to return on February 27, 2024 for a romantic anniversary." (Doc. 99 at 7). JFXD did not seek an extension of the February 21 deadline and it is unreasonable to argue the Court should have considered Mr. Villeneuve's undisclosed "romantic anniversary" plans in setting a briefing schedule.

- JFXD presents a strange argument that, despite naming Ming as a defendant, JFXD continues to believe Ming is a "fraud." (Doc. 99 at 1). JFXD allegedly attempted to investigate Ming and what it found was "chilling." (Doc. 99 at 9). JFXD cites postings on an Internet message board allegedly discussing fraud committed by Ming. The Court cannot understand what JFXD is attempting to establish through this argument because it was JFXD's decision to sue Ming. Any argument from JFXD that Ming is not a proper party is frivolous.

That partial list of arguments in a single filing is representative of JFXD's behavior throughout this case. JFXD and its counsel were unable to present intelligible factual or legal arguments, leaving Ming and the Court to guess as to why JFXD believed its cybersquatting claim was viable. Many cases involve one or two bad arguments or positions, but this case was unique in the number of unintelligible assertions made by JFXD and its counsel.

### IV. Award and Amount

Given the behavior outlined above, this case is "exceptional." This case stands out from others in both the frivolousness and objective unreasonableness of JFXD's behavior. It would be unjust to require Ming bear the cost of litigating against unintelligible factual and legal positions. Moreover, awarding fees might dissuade JFXD from pursuing such tactics in the future.

Having determined this is an exceptional case such that Ming should be awarded

costs and fees, the final issue is determining the amount to award. Local Rule 54.2(f) required JFXD "identify with specificity all disputed issues of material fact and . . . separately identify each and every disputed time entry or expense item." JFXD chose not to comply with this rule. In fact, JFXD did not make any objection to the hourly rate or the number of hours set forth in Ming's motion for fees. The Ninth Circuit has instructed that when an opposing party "cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, [the district court] should normally grant the award in full, or with no more than a haircut." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Defense counsel's hourly rates are reasonable, the number of hours expended in defending this case was reasonable, and the non-taxable expenses were reasonable. Therefore, not even a "haircut" would be appropriate. *Id.* The Court will award the full amount requested.

Accordingly,

**IT IS ORDERED** the Motion for Attorney Fees and Non-Taxable Expenses (Doc. 95) is **GRANTED**. Defendant is awarded $39,746.50 in attorneys' fees and $1,352.27 in non-taxable expenses. The Clerk of Court shall enter a judgment in favor of Defendant Loo Tze Ming in the amount of $41,098.77.

Dated this 8th day of May, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge